## BALFOUR et al. v. PARKINSON et al.

### (Circuit Court, D. Washington, N. D. January 31, 1898.)

**1. VENDOR'S LIEN—PURCHASE-MONEY MORTGAGE.**

Where, in a contract for the sale of real estate, the parties agree that the purchaser is to have time for the payment of the whole or any part of the purchase money, and that the vendor shall have a lien upon the property as security for a deferred payment, to be evidenced by a mortgage, and a mortgage is accordingly executed by the purchaser before the conveyance of title has been consummated, the conveyance of the title, and the mortgage evidencing the vendor's lien, are in law one transaction, and the title passes from the vendor to the purchaser cum onere.

**2. DEED—ESCROW—PREMATURE DELIVERY TO GRANTEE.**

Where a vendor's deed, and the vendee's purchase-money mortgage and the notes secured thereby, are deposited in escrow with a third party, who delivers the deed to the vendee before the happening of the event upon which delivery was conditioned, the vendor may thereupon rely upon the delivery in escrow as a sufficient legal delivery to make the liability of the vendee on his promissory notes absolute, and to render the mortgage effective.

**3. MORTGAGE—PRIOR EQUITIES—NOTICE.**

One who, at the time of loaning money on mortgage, has notice that the mortgagor has not made full payment for the property, and that the deed conveying the same to him is in escrow, is put upon inquiry, and charged with knowledge of facts which he might have acquired in the exercise of ordinary diligence and prudence.

**4. SAME.**

Notice of a prior unrecorded mortgage is sufficient to deprive a subsequent mortgagee of priority, even though he has already advanced part of the amount secured by the later mortgage, if, when he acquires notice, he is still in a position to rescind his agreement with the mortgagor, and resume possession of the sum already advanced, without suffering any loss.

**5. SAME**

In order to entitle a mortgagor to priority over a prior unrecorded mortgage, he must establish that at the time of the delivery of the mortgage to him the mortgagor had obtained possession of the property.

**6. WAIVER.**

In order to constitute a waiver of an existing right, the mere actions of a person, in the absence of an express agreement of surrender, must be such as to evince clearly an intention in the mind of the actor to make the surrender.

Harold Preston, for complainants.

Thomas Burke, for defendant Hopkins.

HANFORD, District Judge.   This is a suit in equity by Robert Balfour, Robert Brodie Forman, and Alexander Guthrie to foreclose a mortgage executed by the defendants Parkinson and wife, covering certain real estate situated in the business part of the city of Seattle. It is unnecessary to describe with particularity the property mortgaged, but, for convenience of reference, it will be designated as lots 7, 8, 9, and 10.   Said mortgage was made to secure a loan of $60,000, which money was expended by Parkinson in the erection of a building upon lot 7.   The defendant Charles Hopkins, by a cross bill, also sets up a mortgage to him covering the same property, given by Parkinson and wife, to secure part of the purchase price for said property, amounting to $61,502.15.   In his pleadings Hopkins claims that his

mortgage is a prior lien upon the whole property, but it is shown by the papers and evidence upon which he relies that he has no just claim to priority as to that part of the property which I have designated as lots 7 and 8. The real controversy in the case is as to which of the two mortgages is entitled to rank as a prior lien upon lots 9 and 10. Hopkins was the owner of the whole property, and by a contract in writing, signed by both Hopkins and Parkinson, it was mutually agreed between them that Hopkins would sell it to Parkinson, and give time for payment of part of the purchase price, and permit Parkinson to give a first mortgage upon lots 7 and 8, for an amount not exceeding $60,000, to be used in the erection of a building upon the part which was to be so incumbered; and that, in consideration of the unpaid part of the purchase money, Parkinson would give to Hopkins his promissory notes for part of the amount, secured by a first mortgage upon lots 9 and 10; and also give promissory notes for the remaining part of the purchase money, secured by a mortgage upon said lots 9 and 10, and also by a second mortgage on lots 7 and 8. To execute this agreement, Hopkins and wife made a deed conveying the property to Parkinson, and Parkinson and wife made their promissory notes for the unpaid part of the purchase money, to be due and payable as provided in said agreement, and, as security for all of said notes, made one mortgage covering all the property, which mortgage contains a provision that the same shall be a first mortgage upon the property and premises mortgaged, except only as against a first mortgage for $60,000, which the mortgagors were at liberty to place upon lots 7 and 8, as per said written agreement. Parkinson also executed a bond, with sureties, in favor of Hopkins, whereby he further obligated himself to erect the brick building on lot 7, as provided in the original agreement, and said deed, bond, notes, and mortgage were placed together, in escrow, with the National Bank of Commerce of the city of Seattle, to be retained in the custody of said bank until the sum of $60,000 should be received by said bank, or placed in its control, for the use of Parkinson in the erection of the building; and when the money should be so received by the bank, or come under its control, for the uses and purposes specified, the bank should deliver said deed to Parkinson upon his demand therefor, and deliver said bond, promissory notes, and mortgage to Hopkins on his demand therefor. While the papers were in escrow, Parkinson, in carrying on negotiations for a loan, represented, to an attorney employed by the complainants to examine his title, that a deed conveying the property from Hopkins and wife to him was in the custody of said bank, to be delivered whenever said bank should receive for his use the sum of $60,000. Said attorney visited the bank, and repeated to the cashier the representations made by Parkinson, and, upon receiving from the cashier confirmation of Parkinson's statement, requested permission to examine the deed, and, said request being granted, he did inspect and examine said deed. Afterwards, at the request of an agent of the complainants, and upon receiving from said agent a verbal promise that the entire sum of $60,000 would be paid by the complainants to said bank, in installments, as the same should be required to pay the

cost of construction of said building, and be demanded by said bank, but before any part of said money had been actually paid into said bank, and without notice to Hopkins, the cashier delivered said deed to said attorney for the complainants, who, without making further inquiry as to the authority or right of the cashier to surrender said deed, received the same, and on the same day filed it for record, together with the mortgage to the complainants, which they have sued upon. Five days afterwards the bank received on account of said loan the sum of $20,000, and the remaining $40,000 was paid in installments as called for, during the progress of the building. Hopkins did not receive notice from any one and had no knowledge of the delivery of his deed until five or six days after the first payment of $20,000 on account of said loan had been received by the bank. As soon as apprised of the recording of his deed and the mortgage to the complainants, he upbraided Parkinson and the cashier of the bank for what they had done, and he at once took from the bank the bond, notes, and mortgage, and filed the mortgage for record. Within a few days afterwards Hopkins' attorney, accompanied by the attorney who had transacted the business for the complainants, visited an agent of the complainants at Portland, Or. The evidence does not show clearly the purpose for which they called upon said agent, nor what statements or representations were made to him during the interview. The result is shown in a letter written by said agent, proposing to release from the operation of the complainants' mortgage that part of the property which Parkinson was not authorized by Hopkins to include in a first mortgage, upon certain conditions, to which letter the following response, dictated by Hopkins, was sent:

"Jan'y 10, 1893.

"Messrs. Balfour, Guthrie & Company, Portland, Oregon—Gentlemen: The proposition contained in your communication to me, dated 7 Jan'y, 1893, to release in favor of Captain Hopkins, upon certain contingencies or conditions, a portion of the water front or submerged lands referred to in the mortgage from John Parkinson and wife, has been submitted by me to Captain Hopkins. and, after being duly considered, he thinks it not worth the trouble to give the same further attention at present, and therefore declines the same."

After the building had been completed, Hopkins, in company with Parkinson, called upon the same agent at Portland, and requested a release from the complainants' mortgage of that part of the property to which Hopkins claimed a right to have a prior lien, and his request was refused. Hopkins then demanded from Parkinson additional security, and, in compliance with that demand, Parkinson and wife gave Hopkins a mortgage upon a tract of land in the state of Oregon, which mortgage has been foreclosed, and the land bid in by Hopkins, at a sale thereof, pursuant to the decree. Hopkins' mortgage in suit herein has also been foreclosed in a suit to which the complainants were not made parties, in the superior court of the state of Washington for King county, and the property sold to Hopkins under the decree in that case; and, as the purchaser at said foreclosure sale, he entered into possession of the property, and for a time received the rents and income; and, from the rents and income which he received from the new building, he has made payments to

the complainants on account of the interest accruing upon their mortgage. Hopkins has also received in cash from Parkinson the sum of $3,500, in reduction of the principal of his debt, besides other payments on account of interest.

It is an important fact in the case that, in his application to the complainants for a loan, Parkinson only offered them as security a mortgage on lots 7 and 8. This is shown by the uncontradicted testimony of Parkinson. He also testifies that he neglected to inform the attorney who prepared the mortgage that only lots 7 and 8 were to be included. The entire property was shown to Mr. McKenzie, agent of the complainants, as the property to be mortgaged, by the broker who negotiated the loan; and, pursuant to special instructions from said agent, the attorney drafted the mortgage so as to include the whole property, and it was executed without any question being suggested as to the right of Parkinson to give the complainants a first mortgage covering the entire property. Neither of the complainants, their agent, or the attorney who examined the title and prepared the mortgage for them, had actual knowledge of the fact that, by the agreement between Hopkins and Parkinson, the former should have a first mortgage on lots 9 and 10, for part of the purchase price of the property; but they did receive information from Parkinson, before the loan was made, that he had not paid Hopkins in full for the property, and they could have obtained full information as to the agreement between Parkinson and his vendor by inquiry of Hopkins, .or by examination of the escrow card and the papers deposited in the bank with the deed. There was no concealment or misrepresentation of the facts by any person authorized to speak for Hopkins, unless the cashier of the bank may be charged with suppression of information which he might have given. But he was not Hopkins' agent, except to hold the papers and deliver them according to special instructions contained in the escrow card, and the evidence shows that he answered truthfully the only questions propounded to him, and exhibited to complainants' attorney the only paper in his custody which he was requested to exhibit.

The first position taken by complainants, in the argument in their behalf, is that their mortgage is in law a first mortgage and superior lien upon the whole property, because it was delivered while the Hopkins mortgage was yet in escrow, and was spread upon the public records ahead of Hopkins' mortgage. Against this position it is to be considered that it is a well-recognized and firmly-established principle that where, in a contract for the sale of real estate, the parties agree that the purchaser is to have time for payment of the whole or any part of the purchase money, and that the vendor shall have a lien upon the property as security for a deferred payment, to be evidenced by a mortgage, and in carrying out such agreement a mortgage is executed by the purchaser, before the conveyance of title has been consummated, the conveyance of the title and the mortgage evidencing the vendor's lien are in law one transaction, and the title passes from the vendor to the purchaser cum onere. 1 Jones, Mortg. (3d Ed.) § 466; Holmes v. Wintler, 47 Fed. 257. Parkinson could not lawfully incumber the property contrary to his agreement with Hop-

kins, for the reason that his title, from its inception, was subject to the lien which by the agreement was reserved by Hopkins for the unpaid part of the purchase money. In so deciding, I am not laying down a rule contrary to the decision of the supreme court of this state in the case of Smith v. Allen (Wash.) 50 Pac. 783, cited in the argument by counsel for the complainants. In that case it was held that what is known as a vendor's lien at common law does not exist in this state, in the absence of an express agreement between the parties. In other words, that where land is conveyed by an absolute deed, and no mortgage is taken, and there is no express agreement that the vendor shall have a lien for the unpaid purchase money, the law does not of itself create a lien. The case is not at all in point as against a mortgage stipulated for in the contract of sale, and executed before the title has been conveyed by the vendor. The right of Hopkins to have immediate delivery of his mortgage became perfect at the instant of the delivery of his deed by the cashier of the bank, and from that moment the bank held the promissory notes and mortgage as agent for him, and not as agent for both parties. Assuming, as we must, that the delivery of the deed to the complainants was authorized by Parkinson, and was therefore a delivery to him, he from that time ceased to have any rights to be protected by a detention of the papers in the custody of the bank; the bank ceased to be the agent of both parties, and held the papers only as agent for Hopkins; the delivery in escrow became and was a sufficient legal delivery to make the liability of Parkinson, on his promissory notes. absolute, and to render the mortgage effective. The recording of Hopkins' mortgage was not essential to its validity, nor could the complainants, by simply filing their deed for record ahead of it, secure any right or advantage as against Hopkins. 1 Jones, Mortg. § 467; Mann v. Young, 1 Wash. Ter. 454–463. The equitable right of parties who contract with reference to property, without notice of the existence of an unrecorded mortgage, will be considered later. This part of the case is being considered from a mere legal standpoint, and in that aspect I conclude that, except as to lots 7 and 8, the Hopkins mortgage is entitled to rank as a first and superior lien.

The second position taken by the complainants is that they made the loan and received their mortgage relying upon the deed from Hopkins to Parkinson as meaning what it purported to be upon its face,—that is, an absolute conveyance of the whole property,—and without knowledge on their part of the existence of Hopkins' mortgage, or of the terms of his agreement with Parkinson respecting the security he was to have for the amount due him, and therefore they stand in the position of bona fide purchasers from an apparent owner of the property, and are entitled to a first lien upon the whole. In this position the complainants take upon themselves the burden of averring and proving affirmatively the payment of their money and receiving their mortgage without notice of the existence of the Hopkins mortgage; and, according to the established rules of practice in courts of equity, it is necessary to set forth in their pleading the date, parties, and contents, briefly, of their mortgage, and aver that the mortgagor was seised in fee and in possession; the consideration

must be stated, with a distinct averment that it was bona fide and truly paid; notice must be denied previous to and down to the time of paying the money and the delivery of their mortgage, and the denial must be of all circumstances from which notice can be inferred; and all of these facts must be proven. Boone v. Chiles, 10 Pet. 177–256. It is not sufficient to sustain the plea of a bona fide purchaser to prove that he promised or gave a guaranty of payment; only actual payment of the money prior to notice of the existing lien or of an equitable title will entitle him to hold the property adversely to the owner of such lien or equitable title. 2 Sugd. Vend. (8th Am. Ed.) 753; 2 Pom. Eq. Jur. §§ 750, 751. In this case the complainants' evidence falls short of meeting the requirements. The testimony of the witnesses in their behalf is to the effect that, up to the time of the execution of their mortgage, they had no knowledge or information whatever regarding any of the claims asserted by Hopkins in this suit, but they offer no proof of lack of notice at any time subsequent to the execution of their mortgage, and their testimony proves that the mortgage was executed, delivered, and filed for record at least five days before the first money was deposited in the bank on account of the loan; and it is affirmatively shown by the testimony, and admitted by the agent who transacted the business for the complainants, that they were apprised of the error committed by Parkinson, in mortgaging the whole property to the complainants, within a period of not more than 10 days from the day on which the first installment of the loan was deposited in the bank. At that time they could have rescinded their agreement to make the loan, and could have recovered the money then in the bank, if they had chosen to do so, so that they were then in a position where they could exercise their option to take as security for the loan such a mortgage as Parkinson could lawfully give, or withhold the loan without suffering any loss. The evidence is also insufficient because it fails to show that, at the time of delivering the mortgage to complainants, Parkinson had obtained possession of the property. Flagg v. Mann, Fed. Cas. No. 4,847. The evidence is also insufficient because it shows that prior to making the loan the complainants, through their agents, had notice of a positive character that Parkinson had not made full payment for the property, and that the deed conveying the property to him had been delivered in escrow. It is usual for prudent and careful business men, in depositing conveyances of title to real property in escrow, to place with such papers an escrow card, or instructions in writing, specifying clearly the conditions upon which the conveyance may be delivered absolutely to the grantee. Therefore the facts which were known to the complainants before the loan was made were sufficient to put them upon inquiry, and to charge them with knowledge of facts which they might have acquired if they had exerted themselves, to the degree of ordinary diligence and prudence, in making inquiry. Courts of equity do not permit a party to claim any benefit from his own ignorance of facts which he could have learned by exercise of ordinary prudence and diligence. In accepting the statement of Parkinson, confirmed by the cashier of the bank, that the deed was in escrow, and that it would be surren-

dered by the bank when the loan should be secured, as if that were a full disclosure of all the conditions, and in receiving the deed and assuming that a clear title to the property thereby became vested in Parkinson, without making further inquiry as to the manner in which the unpaid part of the purchase money was to be secured to Hopkins, the complainants proceeded at their peril.

In their next position, the complainants claim that Hopkins waived his right to claim a first mortgage upon any part of the property. There is no evidence of an express agreement on the part of Hopkins to waive anything, but it is said that from his conduct the law will imply an agreement to waive. It is said that when Hopkins learned of the delivery of his deed by the bank, and the execution and recording of the mortgage to the complainants, he had an option to repudiate the authority of the bank to deliver his deed, and of Parkinson to mortgage the property, and to restore to Parkinson what he had received pursuant to his contract, and thereby annul the whole transaction, or to retain what he had received, and accept his mortgage for the part of the purchase money remaining unpaid, as a second mortgage, and thereby ratify what had been done; that by receiving from the bank Parkinson's promissory notes, and the mortgage and bond, and placing the mortgage on record, and by employing an attorney to negotiate for the release of the property, except lots 7 and 8, from the operation of the complainants' mortgage, and by retaining the bond by which Parkinson was obligated to expend the money loaned by the complainants in the erection of a building, and by demanding and receiving from Parkinson additional security, and by foreclosing his mortgage without making the complainants parties to the foreclosure suit, and by making payments to the complainants on account of the interest accruing on their mortgage, he has recognized said mortgage as being prior to his, and thereby ratified the acts of the bank in delivering his deed, and of Parkinson in giving to complainants a first mortgage upon the whole property. But the acts recited are not inconsistent with his claim to the rights which he contracted for, and it does not lie in the mouth of his vendee, or others who, at the time of contracting with said vendee, were charged with knowledge of the vendor's rights under his contract, to say that he was bound either to rescind the contract or accept less than all of his rights under the contract. He does not occupy the position of one who, knowing that another is dealing with property in ignorance of his rights, keeps silent while expenditures are being made which would not have been made if he had been prompt in giving notice of his claim. In this case there is no evidence tending to prove that the complainants were misled to their prejudice by any statement, act, or omission on the part of Hopkins, after he obtained knowledge of the execution and recording of their mortgage. A waiver of an existing right, to be effectual, must be made intentionally, and, when there is no express agreement to surrender a right, the mere actions of a person, to have that effect, must be such as to evince clearly an intention in the mind of the actor to make the surrender. Bennecke v. Insurance Co., 105 U. S. 355. I can find no grounds for an inference that Hopkins intended to waive his right to the security which

he contracted for, and provided for in his mortgage, or that he did any act to induce complainants to believe, or that they did believe, that he intended to make any such waiver.

It is my conclusion that all of the positions taken by the complainants are untenable. A decree will be entered foreclosing both mortgages, but protecting the rights of all parties so far as may be done, and to this end directing that, if the property be not redeemed within a period of 30 days, the same shall be sold in two parcels, subject to redemption as provided in the statutes of this state in force at the date of the mortgages. Under present conditions, sufficient may be realized at the sale to pay both mortgages in full; but, if not, the complainants may bid in lots 7 and 8, and Hopkins will have the right to redeem from them after the sale, and Hopkins may bid in the other part, subject to the right of the complainants to redeem from him.