2011 OK CIV APP 76

**AMERICAN BANK OF OKLAHOMA, an Oklahoma banking corporation, Plaintiff/Appellee,**

v.

**Drue WAGONER, a/k/a Douglas Drue Wagoner, Jr., and Tammy Wagoner, a/k/a Tammy Sue Wagoner, husband and wife, Defendants/Cross–Plaintiffs/Appellants,**

**and**

**Danny Lawrence and Shanna Lawrence, husband and wife; Hillcrest Medical Center, a corporation; Rogers County Treasurer; and Lakeside State Bank, an Oklahoma corporation, Defendants/Cross–Defendants.**

**No. 107,988.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 5, 2010..

Rehearing Denied Feb. 18, 2011.

Certiorari Denied April 25, 2011.

Sean Burrage, Mark Antinoro, Lindsey M. Jackson, Taylor, Burrage, Foster, Mallett, Downs & Ramsey, P.C., Claremore, Oklahoma, for Plaintiff/Appellee.

Kris Ted Ledford, Kernan & Ledford, Tulsa, Oklahoma, for Defendants/Appellants.

KENNETH L. BUETTNER, Presiding Judge.

¶1 Defendants/Cross–Plaintiffs/Appellants Drue and Tammy Wagoner appeal from the trial court's summary judgment order which found that the Wagoners' mortgage lien was inferior to the mortgage lien held by Plaintiff/Appellee American Bank of Oklahoma (Bank). Defendants/Cross–Defendants Danny and Shanna Lawrence (Borrowers) gave mortgages to Bank and the Wagoners to secure loans for the purchase of the Wagoners' property. After Borrowers defaulted, the Wagoners and Bank litigated the priority of their mortgages. The Wagoners contend that their vendor's purchase money mortgage is superior to Bank's third-party purchase money mortgage. The material facts are not in dispute. As a matter of first impression, we adopt the Restatement view that a vendor's purchase money mortgage is superior to a third-party's purchase money mortgage. Accordingly, the Wagoners were entitled to judgment as a matter of law and we reverse and remand.

¶2 In its April 3, 2009 Petition, Bank alleged that on August 3, 2007, Borrowers executed a note to Bank for $92,709.26 with 12% interest, secured by a mortgage on property in Talala, Oklahoma. Bank asserted the mortgage was recorded in Rogers County the same day. Bank further alleged that the Wagoners held an interest in the same property based on a mortgage recorded August 22, 2007. Bank next asserted that Defendant Hillcrest Medical Center held an interest in the same property under a judgment lien recorded in Rogers County September 24, 2008. Bank alleged that the

Wagoners' and Hillcrest's claims were inferior and subordinate to Bank's interest.[1] Bank contended that Borrowers had defaulted on the note and Bank sought judgment of $91,882.47, plus interest and other expenses, and foreclosure on its mortgage.

¶ 3 The Wagoners filed an Answer and Cross–Claim May 12, 2009. They denied Bank's mortgage was superior to theirs and asked the court to deny Bank's claims to the extent those claims prejudiced the Wagoners' claims. For their cross-claim, the Wagoners asserted Borrowers executed a note to the Wagoners for $30,000 with 9% interest, secured by a mortgage on the same property in Talala, Oklahoma. The Wagoners asserted they recorded their mortgage August 22, 2007. The Wagoners alleged Borrowers were in default and the Wagoners asked for judgment of $28,023.46 plus interest and other expenses, as well as foreclosure on the mortgage.

¶ 4 Bank filed its Motion for Summary Judgment July 2, 2009. Bank included eleven statements of undisputed facts: 1) on August 3, 2007, Borrowers gave Bank a note for $92,709.26 in principal at 12% interest, which included a statement that the purpose of the loan was "purchase subject property;" 2) at the same time, Borrowers gave Bank a mortgage covering certain described property in Talala, which mortgage was recorded August 3, 2007; 3) the Wagoners claim an interest in the same property by virtue of a mortgage recorded August 22, 2007, which is inferior to Bank's mortgage; 4) Hillcrest claims an interest in the property based on a judgment lien recorded September 24, 2008; 5) the Rogers County Treasurer also claimed an interest in the property for unpaid taxes, but Bank had paid the taxes due by the time of its summary judgment motion; 6) Borrowers had defaulted on the note to Bank as of December 2008; 7) on May 20, 2009, a default judgment was entered against the Borrowers for failing to answer in this case; 8) Lakeside Bank filed a Corrected Release of Mortgage, and on June 4, 2009, filed a Dis-

claimer of any interest in the subject property; 9) the Wagoners filed their Answer and Cross–Claim May 12, 2009; 10) the Wagoners' counsel indicated they intended "to litigate over who has the first mortgage [and] assert the affirmative defense of estoppel;" and 11) "(a)t this point in time there are no material facts in dispute regarding the claims made in (Bank's Petition)."

¶ 5 In their Response filed September 22, 2009, the Wagoners admitted all of Bank's statements of fact, except that Bank's mortgage was superior to theirs. The Wagoners asserted theirs was a vendor's purchase money mortgage, which they claimed had priority over the Bank's mortgage as a matter of law. The Wagoners asserted 7 additional statements of material facts which they contended precluded granting summary judgment to Bank: 1) the Wagoners were the owners and sellers of the property; 2) as part of the sales transaction, the Wagoners agreed to loan the Borrowers $30,000 of the purchase price in exchange for a purchase money mortgage; 3) Borrowers executed a promissory note and mortgage in favor of the Wagoners August 3, 2007; 4) Bank knew the Wagoners were the owners and sellers of the property; 5) Bank was aware of the Wagoners' mortgage at the time Bank made its loan to Borrowers; 6) there was no subordination agreement or other document in which the Wagoners agreed that their mortgage would be inferior to the Bank's mortgage; and 7) the Wagoners filed their cross-claim against Borrowers to collect on their note and foreclose on the mortgage; the court granted default judgment in favor of the Wagoners after Borrowers failed to respond to the cross-claim.

¶ 6 Bank filed a Reply to the Wagoners' response October 5, 2009. Bank did not expressly dispute the Wagoners' statements of additional facts, but asserted Bank "does not believe the facts support statement number five" (that Bank was aware of the Wagoners' mortgage at the time Bank made its

---

1. Bank further asserted that Defendant Rogers County Treasurer could claim an interest in the property based on unpaid property taxes for 2007 and 2008, and that Defendant Lakeside Bank might have an interest in the property due to a discrepancy in the legal description of the property in the Partial Release of Mortgage between the Wagoners and Lakeside Bank. Bank's summary judgment motion showed these claims were resolved.

loan to Borrowers).[2] Bank also claimed the Wagoners had not presented proof that theirs was a purchase money mortgage, but Bank treated that fact as having been proved in making its reply.

¶ 7 The trial court heard arguments on the Motion for Summary Judgment October 8, 2009 and entered its Journal Entry of Judgment January 6, 2010. The trial court found the material facts were not in dispute and that Bank was entitled to judgment finding its mortgage lien superior to the Wagoners pursuant to *Johnson v. Fugate*, 1956 OK 35, 293 P.2d 559 and *Estate of Skvorak v. Security Union Title Insurance Co.*, 140 Idaho 16, 89 P.3d 856. The Wagoners appeal.

¶ 8 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 9 The parties do not dispute the material facts that Borrowers purchased property from the Wagoners; on August 3, 2007, Borrowers gave a mortgage to Bank as security for a loan of about 75% of the purchase price and Borrowers gave a mortgage to the Wagoners to secure a loan of the balance of the purchase price; Bank and the Wagoners had knowledge of the other's mortgage but they did not execute a subordination agreement and neither mortgage indicated it was a second or inferior mortgage; Bank recorded its mortgage August 3, 2007 and the Wagoners recorded theirs August 22, 2007; and Borrowers defaulted on both notes. The issue presented is one of law: whether under these facts Bank's or the Wagoners' mortgage has priority.

¶ 10 Bank argued, and the trial court agreed, that the Oklahoma Supreme Court's decision in *Johnson v. Fugate*, 1956 OK 35, ¶ 12, 293 P.2d 559 was controlling. The court there found that when "a purchaser receives a deed and simultaneously executes a mortgage as security for a third person's advance of the purchase money, which is paid to the vendor, the mortgagee has a prior lien for the full amount of the money paid to the vendor over any lien of the vendor for the balance of the purchase price."

¶ 11 The Wagoners responded that *Johnson* was not controlling because its facts are distinguishable. In *Johnson*, the vendor did not take a mortgage on the property; instead, the vendor had a statutory vendor's lien.[3] The Wagoners asserted that because they and Bank both had purchase money mortgages, the facts of this case were governed by the Restatement (Third) of Property: Mortgages, § 7.2, *Purchase Money Mortgage Priority*, which directs that a vendor's purchase money mortgage has priority over a third-party's purchase money mortgage.

¶ 12 Bank responded by insisting that the facts in *Johnson* were identical to those in this case. Bank also contended that this provision of the Restatement has not been adopted in Oklahoma and is therefore not controlling.[4]

---

**2.** Bank's representative Jolene Paget testified that she knew Borrowers were giving the Wagoners a mortgage for the amount of the purchase price not included in Bank's loan.

**3.** A vendor's lien arises in the absence of a mortgage securing a purchase loan. 42 O.S.2001 § 26 provides (emphasis added):

One who sells real property has a special or vendor's lien thereon, independent of possession, *for so much of the price as remains unpaid and unsecured*, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and encumbrancers, in good faith, without notice.

**4.** In *Deutsche Bank Nat. Trust Co. v. Roberts*, 2010 OK CIV APP 47, ¶ 17, 233 P.3d 805, another division of the Oklahoma Court of Civil Appeals cited the Restatement (Third) of Property: Mortgages, § 7.2, *Purchase Money Mortgage Priority*, with approval, but only for the purpose of defining a purchase money mortgage.

¶ 13 Essential to the outcome of this case is the undisputed fact that both Bank and the Wagoners have purchase money mortgages.[5] A "purchase money mortgage" is a mortgage in which the proceeds of the loan are used either to purchase the real estate or to construct improvements on the real estate if the mortgage is given as part of the same transaction in which title is acquired. Restatement (Third) of Property: Mortgages, § 7.2(a), *Purchase Money Mortgage Priority*. Purchase money mortgages have priority over other mortgages and liens attaching to property. 42 O.S.2001 § 16. Because purchase money mortgages have priority over other types of liens, the Oklahoma Supreme Court's decision in *Johnson* is correct: between a purchase money mortgage and a vendor's lien, the purchase money mortgage wins the priority contest.[6] But, the Wagoners have more than a vendor's lien; like Bank, they have a purchase money mortgage.[7] Because of this important distinction, *Johnson* is not dispositive. Instead, we must determine priority between two otherwise equal purchase money mortgages.

¶ 14 We have found no published Oklahoma decision addressing this question, but as noted above, The Restatement (Third) of Property specifically addresses the fact scenario presented in this case. The relevant language is in § 7.2(c), which provides:

(c) A *purchase money mortgage given to a vendor* of real estate, in the absence of a

contrary intent of the parties to it and subject to the operation of the recording acts, *has priority over a purchase money mortgage* on that real estate *given to a person who is not its vendor.*

(Emphasis added). This provision of the Restatement has not been expressly adopted in Oklahoma and Bank argued that it was therefore not applicable to this case. We now consider whether to adopt and apply the rule in Oklahoma.

■ ¶ 15 The plain language of § 7.2(c) provides that it applies only in the absence of a contrary intent of the parties. Accordingly, before we consider whether to apply the rule we must consider whether the parties expressed any intent on the issue of priority. Parties may show an intent to give priority to one mortgage or lien by executing a subordination agreement or by otherwise agreeing that one of the purchase money mortgages is a second, or inferior mortgage. Neither purchase money mortgage in this case indicated an intent for the Wagoners' mortgage to be inferior to Bank's. In the trial court, Bank initially argued that it would not have taken a mortgage from Borrowers if the Wagoners' mortgage was not a second mortgage, but Bank did not dispute the Wagoners' statement of fact, in their Response to the summary judgment motion, that there was no subordination agreement. And, the record does not include documentary evidence of a subordination agreement.[8] The trial court's

---

5. In its Reply to the Wagoners' summary judgment response, Bank denied that the Wagoners' mortgage was a purchase money mortgage. In its Response to Petition in Error, Bank conceded that the Wagoners' loan and mortgage represented a portion of the purchase price of their property.

6. The California Court of Appeals reached the same result as *Johnson* in a case also involving a purchase money mortgage and a vendor's lien. See *Brock v. First South Savings Assoc.*, 8 Cal. App.4th 661, 10 Cal.Rptr.2d 700 (1992) *(review denied)*.

7. The one other Oklahoma case involving this issue, an unpublished decision of another division of the Oklahoma Court of Civil Appeals, also found that *Johnson* is not applicable in the case of two purchase money mortgages. *Case No. 94,883* (2001). In that decision, the mortgages were executed the same day but the vendor filed its mortgage first. The trial court found in favor

of the vendor based solely on time of recording. The appellate court reversed and remanded for determination of whether the vendor had notice of the bank's mortgage at the time it recorded its mortgage. The decision does not mention the relevant Restatement provision.

8. In her deposition, Bank's employee Jolene Paget testified the Wagoners agreed to take a second mortgage. She later testified she used the words "second mortgage" during the closing, but she was unsure whether the Wagoners "said anything in response". Paget also testified she was unable to say which of the two mortgages was executed first. Her testimony established that Bank and the Wagoners each knew of the other's mortgage on the date the two mortgages were executed.

In its Reply to the Wagoners' Response, Bank urged that the Wagoners' mortgage "must" have been a second mortgage because it was for a smaller amount than Bank's mortgage and be-

reliance on *Johnson* did not necessitate a finding the parties had agreed for one of two mortgages to be inferior because *Johnson* held that a vendor's statutory *lien* was not of the same quality as a purchase money *mortgage*. The undisputed facts in this case show the parties had no agreement on the issue of priority.

¶ 16 We have found only a handful of states which have considered the question of priority between two purchase money mortgages in the absence of an agreement as to priority. As noted above, Bank and the trial court relied on an Idaho decision, *Estate of Skvorak v. Security Union Title Insurance Co.*, 140 Idaho 16, 89 P.3d 856 (2004), which expressly rejected the Restatement rule. In *Skvorak,* the vendor sold a 200 acre timber property to the buyer, who gave the vendor a mortgage for part of the purchase price. The buyer obtained a loan from a third party for the down payment, also secured by a mortgage. Both mortgages were executed on the same day. The third-party lender recorded its mortgage a little more than a week before the vendor recorded its mortgage. The intervening facts were more complicated than in the instant case, but one of the issues at trial was the priority between the vendor's purchase money mortgage and the third-party purchase money mortgage held by the lender's assignee. The trial court relied on § 7.2(c) to find the vendor's mortgage had priority over the lender's.

¶ 17 On appeal, the court agreed that both mortgages were purchase money mortgages and that both arose out of one transaction, which was the mortgagee's purchase of the vendor's property. The court further held that the vendor was not an encumbrancer in good faith because the vendor knew of the lender's mortgage for the down payment. In response to the trial court's reliance on the Restatement, the Idaho Supreme Court noted that a Restatement provision is not law until it is adopted, and that it would not adopt a Restatement rule where it was incon-

sistent with Idaho precedent, a different formulation resolved the issue, or the issue could be resolved under current Idaho law. 89 P.3d at 862. The court found that Idaho's recording statutes resolved the issue of priority, which made adoption of the Restatement rule unnecessary. *Id.* The court noted Idaho statutes directing that a purchase money mortgage has priority over other liens against the purchaser; that every conveyance is constructive notice to subsequent mortgages from the time it is recorded; that every conveyance is void as against any subsequent mortgagee for value and in good faith, whose mortgage is first recorded; and that every mortgage is conclusive against anyone subsequently claiming under the grantor, except an encumbancer in good faith who records first. *Id.* The court concluded that under existing Idaho law, the mortgage first recorded has priority, except as to an encumbrancer in good faith without notice. The court noted the vendor had notice of the lender's mortgage so the vendor was not an encumbrancer in good faith without notice, and the lender recorded first. Accordingly, the lender's third-party purchase money mortgage had priority over the vendor's purchase money mortgage under Idaho law.

¶ 18 The Colorado Supreme Court has reached the opposite result in adopting the Restatement rule in a case with facts almost identical to this case. In *ALH Holding Co. v. Bank of Telluride,* 18 P.3d 742 (Colo.2000), the buyer of property borrowed $110,000 from the vendor, secured by a vendor's purchase money deed of trust,[9] and borrowed $55,000 from a bank for the balance of the purchase price, also secured by a deed of trust. The vendor and the bank each had notice of the other's purchase money deed of trust. They were recorded the same day, but the bank's was recorded first. After default, the vendor and bank each sought to have its deed of trust declared superior. The trial court found in favor of the vendor, finding that as a matter of law, a vendor's purchase money deed of trust has priority over a third-

cause the Wagoners needed Bank to make its loan so that the Wagoners could sell their property. Bank has not presented authority showing that either of these factors shows intent for the Wagoners' mortgage to be inferior. The Wagon-

ers' mortgage includes no indication it is a second or inferior mortgage.

9. The synonymous term "deed of trust" is used for mortgage in the Colorado case.

party's purchase money deed of trust. The Colorado Court of Appeals reversed and held that the bank's deed of trust had priority because it was recorded first.

¶ 19 On certiorari, the Colorado Supreme Court first noted that Colorado has a "race-notice" recording act, which provides that no unrecorded instrument is valid against anyone who first records, except between the parties and those who have notice of the instrument. The court observed that as a result of this statute, although the bank's deed of trust was recorded first, the recording statute would not afford priority if the bank had notice of the vendor's deed of trust before the bank acquired its rights. 18 P.3d at 744–745. The court next noted that where a mortgage is executed between a purchaser and a vendor as part of the same transaction in which the purchaser acquires title, then the execution of the deed and the mortgage are considered to be simultaneous. *Id.* at 745. And, "(a)s a matter of law, such a purchaser never has an unencumbered title." *Id.* The court noted the result of this is that a third-party lender of part of the purchase money "cannot acquire rights to the property from the purchaser unencumbered by the vendor's mortgage, regardless of the order in which the documents are signed." *Id.* The court held that because the bank and the vendor had knowledge of the other's deed of trust, the state's race-notice recording statute would not resolve the issue of priority. *Id.* The court next recognized the rule in Colorado that where the recording statute does not dictate priority, purchase money mortgages have priority over all other liens.

*Id.* at 746. The court noted that rule also derives from the fact that the purchaser never acquires an interest unencumbered by the purchase-money mortgage and therefore has no greater interest to assign.[10] *Id.* The court found that this rule would necessarily give the vendor a leg up in the case of purchase money mortgages granted to both a vendor and a third-party lender, because the purchaser never has title, unencumbered by the vendor's purchase money mortgage, to grant to a third-party lender. *Id.* The court noted earlier Colorado decisions which were in accord with the Restatement rule, despite the rule not being expressly adopted. *Id.* The court found nothing in its prior decisions which would prevent the parties from avoiding the effect of the rule by agreement, but the court noted there was no stipulation regarding such an agreement in the record. The court held that although the bank's deed of trust was recorded first, the bank was not entitled to priority under the recording statute because it had notice of the vendor's unrecorded instrument prior to acquiring rights of its own. *Id.* The court further held that in the absence of an agreement to the contrary, the vendor's purchase money deed of trust had priority over the third-party's deed of trust.[11] *Id.* The court therefore reversed the decision of the Colorado Court of Appeals. *Id.*

¶ 20 Courts in the remaining states which have addressed this issue have reached the same conclusion as the Colorado Supreme Court. See *Rothermich v. Weber's St. Charles Lanes, Inc.*, 957 S.W.2d 509, 511 (Mo.App. 1997); *Giragosian v. Clement*, 199 A.D.2d 656, 604 N.Y.S.2d 983 (N.Y.App.Div.1993),[12]

---

**10.** This is referred to as transitory or instantaneous seisin:

[t]he doctrine of instantaneous seisin is a legal fiction which provides that when a deed and a purchase money deed of trust are executed, delivered, and recorded as part of the same transaction, the title conveyed by the deed of trust attaches at the instant the vendee acquires title and constitutes a lien superior to all others. It is well established that a deed and a mortgage to the vendor for the purchase price, executed at the same time, are regarded as one transaction. The title does not rest in the vendee but merely passes through his hands, and during such instantaneous passage no lien against the vendee can attach to the title superior to the right of the holder of the purchase money mortgage.

*West Durham Lumber Company v. Meadows*, 179 N.C.App. 347, 635 S.E.2d 301, 304 (N.C.App. 2006) (*review denied*, 361 N.C. 704, 655 S.E.2d 404 (2007)) (citations omitted).

**11.** We note that in the summary judgment pleadings, Bank contended *ALH* is not applicable because it does not reflect Oklahoma law and because in *ALH*, the buyer borrowed a greater amount from the vendor than from the bank. We have not found any support for Bank's claim that the amounts or proportions of two purchase money mortgages has any effect on priority.

**12.** *Giragosian* involved facts nearly identical to those here: the seller loaned the buyer $26,000 and the bank loaned the buyer $86,000, both

*Farmers Trust Co. v. Bomberger,* 362 Pa.Super. 92, 523 A.2d 790 (1987) (vendor's purchase money mortgage superior, but parties had agreed before transaction that vendor would have second mortgage). We have found few states that have addressed this precise issue, likely because lending institutions commonly require a subordination agreement or some other expression of intent for the vendor to a hold a second mortgage.

¶ 21 The following passage from *Comment d* following § 7.2(c) explains well the policy reasons for the rule:

> The preference for vendor purchase money mortgagees is arguably counterintuitive, at least from an economic perspective. After all, both the third party lender and the vendor make the sale transaction possible, and both rely upon the security of the same specific property for payment. Moreover, third party purchase money mortgagees, especially in residential transactions, often invest a substantially greater economic stake in the mortgaged property than that retained by the vendor.

Nevertheless, the equities favor the vendor. Not only does the vendor part with specific real estate rather than money, but the vendor would never relinquish it at all except on the understanding that the vendor will be able to use it to satisfy the obligation to pay the price. This is the case even though the vendor may know that the mortgagor is going to finance the transaction in part by borrowing from a third party and giving a mortgage to secure that obligation. In the final analysis, the law is more sympathetic to the vendor's hazard of losing real estate previously owned than to the third party lender's risk of being unable to collect from an interest in real estate that never previously belonged to it.

Restatement (Third) of Property (Mortgages) § 7.2 (1997) *Comment d.*[13] We find that Oklahoma's statutory preference for purchase money mortgages indicates support for the policy explained in this comment. And, as between two purchase money mortgages, we are persuaded by the reasoning that the

loans were for the purchase of the seller's property, both were secured by mortgages executed the same day, and neither mortgage contained language subordinating it to the other. The bank recorded its mortgage the day before the seller recorded his. The trial court held the seller's purchase money mortgage had priority and the bank appealed. After noting the general rule in New York that between two mortgages, the first one executed has priority, and where two mortgages are executed simultaneously, the first one recorded has priority, the appellate court explained that a different rule applied in the case of two purchase money mortgages. The court stated the rule as:

> A vendor of real property has an equitable lien for the unpaid purchase price, and when the vendee gives a purchase-money mortgage the lien of such mortgage is substituted for the vendor's equitable lien. [Thus, t]he rule is that a purchase-money mortgage has priority over all rights, claims, judgments, or liens of any kind arising through the mortgagor although they are prior in point of time.

199 A.D.2d at 657. The court concluded that the vendor's purchase money mortgage was superior, even though the quote on which it relied did not specifically address the priority *between two* purchase money mortgages.

**13.** The Reporter's Note to the Restatement provision quotes a treatise which further elaborates on the rationale behind the rule:

> [T]he vendor has the edge because the property she is relying on for payment was previously hers up to the time of sale and mortgage back; there never was an instant when she relinquished a hold on it; and she would never have parted with it at all except on the belief and faith that if her buyer defaulted she could either recapture the property or get paid out of it. And this is normally so even though she may know that her buyer is going to finance the deal in part by borrowing some of the purchase money from another and give him a mortgage on the property. Other mortgagees, on the other hand, even including lenders of purchase money, parted only with money in which they retained no· interest whatsoever, and placed their reliance for repayment of their debts on getting a security interest in other property not only never previously owned by them but not even owned by the mortgagor at the time the money was loaned, even though they might not have known that fact. The difference in attitude toward the hazard of losing property previously owned and that of not getting an interest in property which had never before belonged to the claimant is an old and important one. Here it justifies preferring the vendor purchase money mortgagee over even the third party lender of the purchase money.

1 G. Nelson and D. Whitman, *Real Estate Finance Law* (3d ed. 1993), 805–06, as quoted in Restatement (Third) of Property (Mortgages) § 7.2 (1997).

vendor should prevail because in the case of a vendor's purchase money mortgage, the vendor conveys title already encumbered, so that the mortgage the purchaser gives to the third-party lender is necessarily a mortgage on *previously encumbered* property.[14] It logically follows that the parties would have to jointly intend to overcome such circumstance.

▇▇▇ ¶ 22 The above reasoning depends on both mortgagees having notice of the other's mortgage, which leads us to observe that the Restatement rule provides that its effect is subject to operation of the recording acts. We next consider whether the recording acts affect priority between the two purchase money mortgages in this case. The general rule in Oklahoma is that the first to file has priority. *Cassidy v. Bonner,* 54 F.2d 234, 235 (10th Cir.1931).[15] The Oklahoma recording act provides, in pertinent part:

> Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage, or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one (1) year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided.

16 O.S.2001 § 15. In Oklahoma, a recorded mortgage constitutes constructive notice of its contents to all subsequent purchasers, mortgagees, encumbrancers or creditors. 16 O.S.2001 § 16; 46 O.S.2001 § 7. It is undisputed that Bank and the Wagoners each knew about the other's mortgage at the time the mortgages were executed August 3, 2007. Because the mortgages were executed on the same day and as part of the same purchase of property, they may be considered simultaneous. Both of these facts dictate that neither mortgagee is considered to be a good faith encumbrancer without notice.[16] We again look to *Comment d* for explanation of the impact of notice and recording in a case like this:

> As between a purchase money mortgage to a third party lender and one to a vendor, *if both lenders have notice of the other's mortgage, the vendor's mortgage will be superior to its third party counterpart.... The recording acts do not vary this result, since in the great majority of states they award priority only to a subsequent purchaser without notice, and here each mortgagee has notice of the other....*

> So too will the vendor prevail under the rule of § 7.2(c) where each lender lacks notice of the other's mortgage.... Here again, the recording acts do not vary this result, since they operate to award priority only to a subsequent purchaser without notice, and here neither mortgagee can meaningfully be said to be subsequent to the other, since both mortgages arise from the same transaction.

**14.** In *Midland v. Carpenter,* 1929 OK 276, 279 P. 310, 137 Okla. 204, the Oklahoma Supreme Court quoted with approval the following statement:

> Where, in a contract for the sale of real estate, the parties agree that the purchaser is to have time for the payment of the whole or any part of the purchase money, and that the vendor shall have a lien upon the property as security for a deferred payment, to be evidenced by a mortgage, and a mortgage is accordingly executed by the purchaser before the conveyance of title has been consummated, the conveyance of the title, and the mortgage evidencing the vendor's lien, are in law one transaction, and the title passes from the vendor to the purchaser cum onere."

*Id.* at 314, quoting *Balfour v. Parkinson,* (C.C.) 84 F. 855 (D.Wash.1898).

**15.** In *Cassidy,* the court quoted 41 C.J. 549 that "(i)n the absence of special equities growing out of questions of notice, good or bad faith, want of consideration or the like, the rule of priority as between two independent mortgages on the same property, given at different times to different mortgagees, is that the one first recorded is a superior lien to the other, whether it was executed before or after such other." The mortgages in *Cassidy* were signed two months apart and recorded a few days apart.

**16.** See *Gonzalez v. Citizens Sec. Bank and Trust Co.,* 2008 OK CIV APP 3, 176 P.3d 1223 (cert. denied), which held that a mortgagee, who is aware that the buyer has a statutory vendee's lien for the amount of earnest money paid before the mortgage was executed, is not a good faith encumbrancer for value for purposes of the priority granted in 42 O.S.2001 § 28.

However, where only one of the parties has notice of the other, the recording acts, rather than the principle of § 7.2(c), should govern and should award priority to the party lacking notice. Even though delivery of the mortgages is essentially simultaneous, the party lacking notice must in fairness be treated as the subsequent taker and thus eligible for the protection of the recording acts. Thus, in a jurisdiction having a notice type recording act, the lender who takes its mortgage without notice of the other's mortgage prevails.... In a race-notice type jurisdiction, the lender who takes without notice must also record first in order to prevail.

(Emphasis added). In this case, because it is undisputed that both mortgagees had notice of the other's mortgage which was executed on the same day, the recording acts do not alter the application of the Restatement rule.[17]

¶ 23 "The Restatement has long been recognized as a material source of the common law. It is only after its adoption by the highest court of a jurisdiction that the endorsed portions of the Restatement stand transformed into formal law." *Bouziden v. Alfalfa Elec. Co-op., Inc.*, 2000 OK 50, 16 P.3d 450, Opala, J., dissenting (footnotes omitted). Oklahoma has no statutory or published decisional law addressing the issue presented in this case. Accordingly, we look to the Restatement to inform our decision.

¶ 24 The undisputed facts show that Bank and the Wagoners each made purchase money mortgages to Borrowers as part of the same transaction, both had notice of the other's mortgage, and they made no agreement for one of the mortgages to have priority. Bank's is a third-party purchase money mortgage and the Wagoners' is a vendor's purchase money mortgage. We adopt the rule set out in the Restatement (Third) of Property (Mortgages) § 7.2(c), which gives the vendor's purchase money mortgage priority under the facts of this case. The Wagoners were entitled to judgment as a matter of law; consequently, we REVERSE summary judgment granted in favor of Bank, AND REMAND with directions to enter judgment for the Wagoners.

HANSEN, J., and HETHERINGTON, J., concur.

---

**17.** In Oklahoma, "notice" is considered to be information which is "enough to excite attention and put a reasonably prudent person on his guard" and cause him to make inquiry. *Palmer v. Crews Lumber Co., Inc.*, 1973 OK 38, 510 P.2d 269, 273.