2012 OK CIV APP 38

The F & M BANK & TRUST CO., an Oklahoma Banking Corporation, Plaintiff/Appellee,

v.

GARDNER CONSTRUCTION COMPANY, Defendant/Appellant,

Karen J. Biddle; Spouse If any, of Karen J. Biddle; Heirs, Personal Representatives, Devisees, Successors, Assigns, and the Unknown Successors of Rodney B. Biddle, Deceased; Occupants of Premises; and State of Oklahoma Ex Rel Oklahoma State Tax Commission, Defendants.

No. 108,443.

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 6, 2012.

Certiorari Denied April 2, 2012.

Roger K. Eldredge, Tulsa, Oklahoma, for Appellant.

Kent E. Renfrow, Tulsa, Oklahoma, for Appellee.

Opinion by LARRY JOPLIN, Vice–Chief Judge.

¶1 In a foreclosure action, mechanic's and materialman's lien (lien) claimant, Gardner Construction Company (Gardner), Defendant/Appellant, seeks review of the trial court's order granting the summary judgment motion of Plaintiff/Appellee, F & M Bank and Trust Company (F & M), which determined the mortgage held by F & M was superior to the lien held by Gardner, relating to real property and improvements owned by Rodney and Karen Biddle in Broken Arrow, Oklahoma.[1] While the final partial judgment for Plaintiff and decree of foreclosure issued by the district court on June 16, 2010 disposed of a number of issues, only the lien priority between Gardner and F & M is at issue in this appeal.

¶2 In its September 30, 2009 petition, F & M alleged the Biddles executed a June 23, 2008 promissory note to F & M, for $342,000 with interest and secured by a mortgage on the property in Broken Arrow, Oklahoma.

---

1. Rodney Biddle executed the mortgage with his wife, Karen Biddle, in June 2008. He was also a party to the construction contract with Gardner. Mr. Biddle passed away in January 2009, while the home was still being constructed. As a result, both F & M and Gardner pursued the foreclosure action against Mrs. Biddle, as the surviving joint tenant with right of survivorship.

The mortgage was recorded with the Tulsa County Clerk's office on June 25, 2008. F & M alleged the Biddles defaulted, leaving $305,629.79, plus interest, due and owing to F & M under the terms of the note.

¶ 3 In F & M's amended petition for foreclosure, filed December 8, 2009, Gardner was made a party to the matter, due to Gardner's claimed lien, recorded November 17, 2009. Pursuant to Gardner's construction contract with the Biddles, Gardner claims $53,758.70, plus interest and attorney fees for unpaid construction and material costs. In the amended petition, F & M asserted that any claims by Gardner were junior and inferior to the F & M mortgage lien.

¶ 4 In its answer, counterclaim and cross-claim, filed December 11, 2009, Gardner insists its lien is superior to F & M's mortgage lien, arguing Gardner's supply of materials and labor for the improvements to the subject property began March 20, 2008, and its lien was duly recorded on November 17, 2009, after Gardner's work ceased on October 30, 2009.

¶ 5 Both Gardner and F & M filed competing motions for summary judgment. In its statement of undisputed fact, Gardner disputed F & M's assertion that its mortgage with the Biddles was a purchase money mortgage. Gardner also insisted it began to supply materials to the building site on March 20, 2008. F & M argued the construction contract between the Biddles and Gardner indicated work began on June 12, 2008, later than Gardner's asserted March 20, 2008 date. In either event, Gardner insists work commenced prior to the recording of F & M's mortgage on June 25, 2008.

¶ 6 In support of its position that its mortgage was a purchase money mortgage entitled to priority over any other liens, F & M noted the Biddles obtained title to the property upon the execution of the F & M mortgage; and in fact the loan proceeds were used to purchase the land on which the eventual improvements were made. Furthermore, F & M demonstrated Gardner was paid by the bank draws on the scheduled note and Gardner was the first paid by F & M under the construction mortgage. While Gardner argued the mortgage was not a purchase money mortgage, Gardner did not dispute the F & M mortgage made possible the purchase of the land and the construction of the home that followed.

¶ 7 The court granted F & M's summary judgment motion and denied Gardner's cross motion for partial summary judgment. The court found F & M's mortgage was superior to Gardner's lien, and superior to the right, title and interest of the other Defendants as well. The court then found the adjudged property foreclosed and ordered the corresponding foreclosure sale in order to satisfy the judgment, interest, and attorney fees and costs as follows:

*First:* To the payment of the costs herein accrued and accruing;

*Second:* To the payment of the judgment and first lien of the Plaintiff, THE F & M BANK & TRUST COMPANY, in the amounts herein set out;

*Third:* The Balance, if any, to be paid to the Court Clerk of this Court to await the Further order of this Court so that such funds will be available to the Court for distribution of the defendants based upon the priority of their claims to the property, which priority and amount shall be considered by the court in connection with the resolution of the balance of the pending claims.

¶ 8 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App. 1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. And we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 9 Oklahoma Statutes address priority of purchase money mortgage claims and mechanics and materialman's liens.[2] F & M argues that pursuant to 42 O.S. § 16 and

---

2. As to a purchase money mortgage, 42 O.S.2001 § 16:

*Sisemore v. Voelkle*, 1957 OK 127, 312 P.2d 922, maintenance and materialman's lien claims which accrued under contracts with the eventual purchaser are inferior to the purchase money mortgage lien, and the trial court properly gave priority to F & M's mortgage over Gardner's lien.

¶ 10 In contrast, Gardner argues that *Sisemore* is not controlling, and F & M's mortgage is not a purchase money mortgage, so that § 16 does not apply to F & M's loan and offers no priority protection. Therefore, Gardner says 42 O.S. § 141 dictates superiority of its lien over the mortgage.

¶ 11 Because a "purchase money mortgage" enjoys priority by virtue of the application of 42 O.S. § 16, it is important to determine whether the F & M mortgage is a purchase money mortgage.

A "purchase money mortgage" is a mortgage in which the proceeds of the loan are used either to purchase the real estate or to construct improvements on the real estate if the mortgage is given as part of the same transaction in which title is acquired. Restatement (Third) of Property: Mortgages, § 7.2(a), Purchase Money Mortgage Priority.

*American Bank of Oklahoma v. Wagoner*, 2011 OK CIV APP 76, ¶ 13, 259 P.3d 841, 845. The funds from the F & M promissory note for the Biddles' purchase of the Broken Arrow property were, according to the record, used to purchase the land on which the house was constructed and provided the draws on which Gardner relied to complete the construction. In fact, the loan was titled a "Construction Mortgage." The loan was executed on June 23, 2008 and the deed subsequently filed with the Tulsa County Clerk on June 25, 2008.

¶ 12 Gardner claims the mortgage is not a "purchase money mortgage," because it is called a "Construction Mortgage," taking it outside the scope of § 16. However, given the fact the loan was used to purchase the real estate and construct the improvements, in a manner consistent with the definition provided under the Restatement provision, Gardner's argument falls short.

¶ 13 *Sisemore v. Voelkle* was an action to foreclose upon a mortgage, from which the mechanic's and materialman's lien claimants appealed after the lower court determined their liens were inferior to the purchase money mortgage lien. In reviewing the lower court's decision, the Oklahoma Supreme Court determined the liens accrued to the mechanics and materialmen under contracts with a *purchaser who was not in possession and who had not obtained title when the contracts were executed*, making the mechanic's and materialman's liens inferior to the purchase money mortgage lien which "impressed upon the property simultaneously with the issuance of the deed through the escrow, and the title passed to the vendee

---

A mortgage given for the price of real property, at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording laws.

As to a maintenance and materialman's lien, 42 O.S.2001 § 141:

Any person who shall, under oral or written contract with the owner of any tract or piece of land, perform labor, furnish material or lease or rent equipment used on said land for the erection, alteration or repair of any building, improvement or structure thereon or perform labor in putting up any fixtures, machinery in, or attachment to, any such building, structure or improvements; or who shall plant any tree, vines, plants or hedge in or upon such land; or who shall build, alter, repair or furnish labor, material or lease or rent equipment used on said land for building, altering, or repairing any fence or footwalk in or upon said land, or any sidewalk in any street abutting such land, shall have a lien upon the whole of said tract or piece of land, the buildings and appurtenances. If the title to the land is not in the person with whom such contract was made, the lien shall be allowed on the buildings and improvements on such land separately from the real estate. Such liens shall be preferred to all other liens or encumbrances which may attach to or upon such land, buildings or improvements or either of them subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery, the planting of such trees, vines, plants or hedges, the building of such fence, footwalk or sidewalks, or the making of any such repairs or improvements; and such lien shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found, and compliance with the provisions of this act shall constitute constructive notice of the claimant's lien to all purchasers and encumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor or the first use of the rental equipment on said land.

burdened with the mortgage lien." *Sisemore v. Voelkle,* 312 P.2d at 925. The *Sisemore* court also noted the entity with which the mechanics and materialmen contracted never received title to the property clear of the purchase price claim of the vendor. *Id.*

¶ 14 Gardner contracted with the Biddles prior to the Biddles receiving title to the property. As a result, the Biddles never obtained title to the property clear of the purchase price claim of the purchase money mortgagee. The vendors in *Sisemore* and F & M in this case are in a similar posture, holding purchase money mortgage liens. The same result should follow here.

¶ 15 *Johnson v. Fugate,* 1956 OK 35, 293 P.2d 559, also supports the proposition that a purchase money mortgage is superior. *Johnson* examined priority between a purchase money mortgage and a vendor's lien, finding the purchase money mortgage was superior. In addition, the *Johnson* court noted the purchase money mortgage funds were used to pay the vendor in a manner analogous to this case, in which funds from the F & M purchase money mortgage were used to pay Gardner's construction contract.

¶ 16 Finally, F & M maintains the Restatement should control here. The lien priority of the purchase money mortgage is addressed in the Restatement as follows:

> (b) A purchase money mortgage, whether or not recorded, has priority over any mortgage, lien, or other claim that attaches to the real estate but is created by or arises against the purchaser-mortgagor prior to the purchaser-mortgagor's acquisition of title to the real estate.

Restatement (Third) of Property: Mortgages, § 7.2(b) (1997). The comments explain that the purchase money mortgage has priority over any judgment lien, even a lien of which the purchase money mortgagee has actual knowledge. This priority practice is viewed as a method of encouraging purchase money financing and promotes lending. The fairness of this practice is explained as follows:

> Without this advance of money, the purchaser-mortgagor would never have received the property and the other claim-

ants would never have had the opportunity to satisfy their claims from such a convenient source. As in the vendor purchase money context, this section seeks to avoid conferring a windfall on those claimants.

Restatement (Third) of Property: Mortgages, § 7.2(b) (1997) *Comment b.*

¶ 17 While the Oklahoma Supreme Court has not adopted this provision of the Restatement, the appellate court has turned to this Restatement provision for guidance; and the Restatement rationale is in keeping with 42 O.S. § 16.[3] In light of the priority given purchase money mortgages by statute and in Oklahoma Supreme Court decisions, the purchase money mortgage of F & M is superior to the lien of Gardner. We do not find error in the lower court's decision awarding priority to the purchase money mortgage lien holders.

¶ 18 AFFIRMED.

BUETTNER, P.J., and MITCHELL, J. (sitting by designation), concur.

---

3. *See American Bank of Oklahoma v. Wagoner,* 259 P.3d at 850 (court's opinion was informed by the comments in Restatement (Third) of Property: Mortgages, § 7.2(b) (1997)).