OSCN Found Document:SNOW v. TRAVELCENTERS OF AMERICA

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 SNOW v. TRAVELCENTERS OF AMERICA
2023 OK CIV APP 8
527 P.3d 741
Case Number: 119143
Decided: 07/12/2022
Mandate Issued: 03/24/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV

Cite as: 2023 OK CIV APP 8, 527 P.3d 741

 

GARY SNOW as Court Appointed Personal Representative of the Estate of Wanda Perry and GARY SNOW, as Court Appointed Personal Representative of the Estate of A.P., a Deceased Minor Child, Plaintiffs/Appellants,
v.
TRAVELCENTERS OF AMERICA LLC d/b/a TA Sayre # 152, TA OPERATING LLC d/b/a TravelCenters of America d/b/a TA Sayre # 152, SHELBY NICOLE SANDOVAL (an Employee of TravelCenters of America, LLC), JASMINE THOMASINA NOEMI FOOTE (an Employee of TravelCenters of America, LLC), Defendants/Appellees,
and
AUNTRA LAWAN EDMONDS, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

AFFIRMED

John Branum, Jessica S. Ladd, BRANUM LAW FIRM, PLLC, Oklahoma City, Oklahoma,
and
Bryce Johnson, Sherman A. Reed, JOHNSON & BISCONE, P.A., Oklahoma City, Oklahoma
and
John P. Zelbst, Chandra L. Holmes Ray, ZELBST, HOLMES & BUTLER, Lawton, Oklahoma
and
MaryGaye LeBoeuf, Oklahoma City, Oklahoma, for Plaintiffs/Appellants

Kerry R. Lewis, Nathan E. Clark, RHODES, HIERONYMUS, JONES, TUCKER & GABLE, P.L.L.C., Tulsa, Oklahoma, for Defendants/Appellees

JOHN F. FISCHER, CHIEF JUDGE:

¶1 This case concerns an automobile accident caused by defendant Auntra Lawan Edmonds which resulted in the deaths of Wanda Perry and her one-year-old granddaughter, A.P. Gary Snow, as Court Appointed Personal Representative of the Estate of Wanda Perry and the Estate of A.P., a Deceased Minor Child, sued Edmonds, TravelCenters of America, LLC, d/b/a TA Sayre # 152, TA Operating LLC d/b/a TravelCenters of America d/b/a TA Sayre # 152 (collectively TravelCenters), and its employees Shelby Nicole Sandoval and Jasmine Thomasina Noemi Foote. The accident occurred after Edmonds purchased motor fuel from a TravelCenters store where Sandoval and Foote were working. Plaintiffs alleged that TravelCenters and its employees were negligent in selling motor fuel to Edmonds because he was intoxicated at the time. TravelCenters filed a motion to dismiss arguing that the Plaintiffs' petition failed to state a cause of action. The Plaintiffs appeal the judgment entered in favor of TravelCenters, Sandoval and Foote granting TravelCenters' motion to dismiss.[1]

¶2 As stated in the Plaintiffs' petition in error, the single issue raised by this appeal is whether a retail vendor of motor fuel has a duty "to refrain from selling motor fuel to a noticeably intoxicated person who the vendor knows or should have known is driving the motor vehicle for which the fuel is purchased." The duty the Plaintiffs seek has yet to be recognized in Oklahoma's statutory or common law. We affirm the dismissal of the Plaintiffs' petition.

BACKGROUND

¶3 The allegations in the Plaintiffs' petition assert the following as the facts forming the basis for their negligence claim against TravelCenters, Sandoval and Foote:

1. Edmonds, who was intoxicated at the time, drove his automobile to TravelCenters Store # 152 in Sayre;

2. Edmonds left his girlfriend, who was also intoxicated, in the automobile and went inside to pre-pay for gasoline;

3. Inside the store, Edmonds spoke with two attendants working there, Sandoval and Foote;

4. Edmonds was "noticeably, observably, obviously intoxicated," and Sandoval and Foote observed that Edmonds was intoxicated;

5. Edmonds expressly told them he had been drinking;

6. Sandoval and Foote "recklessly and negligently" sold Edmonds gasoline;

7. Edmonds pumped the gasoline into his automobile and drove away from the TravelCenters store;

8. Later, Edmonds was speeding through Mangum, Oklahoma, when he ignored a stop sign, lost control of his automobile, careened off the roadway, and ran over Perry, who was standing in her yard holding A.P., killing both of them.

¶4 Edmonds eventually was convicted of manslaughter for causing the deaths of Perry and A.P., and sentenced to life imprisonment. The Plaintiffs obtained a default judgment as to liability against Edmonds with the amount of damages reserved for later determination. That judgment is not at issue in this appeal.

¶5 The Plaintiffs' petition alleges three theories of recovery against TravelCenters, Sandoval and Foote: (1) negligence, (2) negligent entrustment, and (3) negligent hiring, supervision and training. In addition, the petition alleges that Sandoval and Foote were acting within the scope of their employment with TravelCenters when they negligently sold motor fuel to a noticeably intoxicated Edmonds and that they were negligent in entrusting motor fuel to Edmonds, given his obviously intoxicated condition.

¶6 TravelCenters filed a motion to dismiss pursuant to 12 O.S.2011 § 2012(b)(6), arguing that the Plaintiffs' petition failed to state a cognizable theory of recovery under Oklahoma negligence and negligent entrustment law. [2] The parties appeared for a hearing on January 25, 2019. An entry on the court's docket for that date states that TravelCenters' motion to dismiss for failure to state a claim was sustained. At the conclusion of that hearing, counsel for TravelCenters advised the court that he would prepare a written order reflecting the court's ruling. However, no written order memorializing the court's ruling was filed at that time.

¶7 On January 8, 2020, the Plaintiffs filed a Motion to Reconsider or Revisit, pointing out that no appealable order had been issued by the court since the January 25, 2019 hearing on TravelCenters' motion to dismiss. The Plaintiffs also argued that the district court erred in: (1) finding that "gas stations owe no duty to abstain from selling gas to drunk customers," and (2) in granting TravelCenters' motion to dismiss. Relying on Title 76 O.S.2011 § 1, the Plaintiffs argued that the defendants had a "statutory duty" not to sell motor fuel to Edmonds "because the evidence shows that they knew he was unsafe to drive."[3]

¶8 As reflected in its September 21, 2020 judgment, the district court overruled the Plaintiffs' motion to revisit the January 25, 2019 ruling, granted TravelCenters' motion to dismiss and entered judgment in favor of TravelCenters, Sandoval and Foote. Even though the Plaintiffs' claim against Edmonds had not been completely resolved by that date, the district court found no just reason for delay and directed that the judgment in favor of TravelCenters, Sandoval and Foote be entered as a final judgment pursuant to 12 O.S.2011 § 994(A).

PROCEDURAL ISSUE

¶9 Although the district court sustained TravelCenters' motion to dismiss when it was heard on January 25, 2019, that ruling was not "reduced to writing in conformance with Section 696.3 . . . signed by the court, and filed with the court clerk" at that time. 12 O.S.2011 § 696.2(A). Further, that ruling only adjudicated the Plaintiffs' claim against TravelCenters, Sandoval and Foote. It did not adjudicate the Plaintiffs' claim against Edmonds. As such, it was "subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk." 12 O.S.2011 § 994(A).

¶10 A district court ruling which lacks finality and appealability "is but an intermediate order in the case, [and remains] within the trial judge's complete control to modify or alter at any time before judgment." LCR, Inc. v. Linwood Props., 1996 OK 73, ¶ 11, 918 P.2d 1388 (emphasis in original). A motion to reconsider challenging such an intermediate ruling "is to be treated as a request for reconsideration of an intermediate ruling in the case." Id. (emphasis in original). The Plaintiffs' motion to reconsider was not filed after entry of a "judgment, decree or appealable order." See 12 O.S.2011 § 651; 12 O.S.2011 § 1031; 12 O.S. Supp. 2013 § 1031.1. Consequently, we view the Plaintiffs' motion as "invoking [judicial] discretion and not as a functional equivalent to a motion for new trial." Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 21, 396 P.3d 210.

¶11 However, the Plaintiffs' motion did result in the entry of a judgment in favor of TravelCenters, Sandoval and Foote, dismissing the Plaintiffs' petition as to them. That judgment is the subject of the Plaintiffs' appeal.

STANDARD OF REVIEW

¶12 "An order dismissing a case for failure to state a claim upon which relief can be granted is subject to de novo review." Tuffy's, Inc. v. City of Okla. City, 2009 OK 4, ¶ 6, 212 P.3d 1158 (footnote omitted). When reviewing the dismissal of a petition for failure to state a claim "the court must take as true all of the challenged pleading's allegations together with all reasonable inferences that may be drawn from them." Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 4, 230 P.3d 853. Nonetheless, the purpose of a motion to dismiss for failure to state a claim is to test the law that governs the claim rather than the facts asserted in support of that claim. Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶ 5, 222 P.3d 21. A motion to dismiss "should be denied if relief is possible under any set of facts which can be established and is consistent with the allegations." Id. The movant bears the burden of demonstrating that the petition is legally insufficient. Tuffy's, 2009 OK 4, ¶ 6. The movant's burden "is not a light one" and "motions to dismiss are usually viewed with disfavor." Id.; Fanning v. Brown, 2004 OK 7, ¶ 4, 85 P.3d 841.

ANALYSIS

¶13 The Plaintiffs' cause of action is based on two theories of liability. First, they rely on Oklahoma's dram shop liability cases.[4] Brigance v. Velvet Dove Restaurant, Inc., the case that established "dram shop liability" in Oklahoma, held that "one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person." Brigance, 986 OK 41, ¶ 17, 725 P.2d 300.[5] The Plaintiffs ask this Court to extend Brigance to include retail vendors of motor fuel.

¶14 Second, the Plaintiffs rely on well-established principles of common law to argue that a retail vendor should have a duty to refuse to sell motor fuel to an intoxicated automobile driver. Principally, the Plaintiffs cite Oklahoma negligent entrustment law and seek to extend that liability to retail vendors who "entrust" motor fuel to an intoxicated driver.

¶15 TravelCenters' motion to dismiss argued that neither of these theories of liability has been recognized in Oklahoma. TravelCenters' motion was decided on the basis of the question of law raised in this appeal: Does a retail vendor have a duty to refrain from selling motor fuel to a driver for immediate use by the driver in an automobile if the vendor knows or should know that the driver is intoxicated?

I. Negligence

¶16 Both of the Plaintiffs' tort-based theories of liability are derived from the law of negligence. The necessary elements of a negligence claim are well known: "(1) a duty owed by the defendant to protect plaintiff from injury (2) failure to fulfill that duty and (3) injuries to plaintiff proximately caused by defendant's failure to meet the duty." Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 13, 352 P.3d 1223 (footnote omitted). "The threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to have been harmed." Haas v. Firestone Tire & Rubber Co., 1976 OK 178, ¶ 14, 563 P.2d 620. "In tort jurisprudence, liability is based upon the existence of a legal duty attached to a particular relationship between the parties. For example, negligence 'is . . . a term of relation' where the existence of a legal duty must be owed by the defendant to the particular plaintiff bringing the action . . . ." Hensley v. State Farm Fire and Cas. Co., 2017 OK 57, ¶ 16, 398 P.3d 11 (citing Palsgraf v. Long Island Ry. Co., 248 N.Y. 339, 345, 162 N.E. 99, 100-101 (1928)). "One who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person." Palsgraf, 248 N.Y. 339, 345, 162 N.E. 99, 103 (1928).

¶17 Whether the defendant owes a duty to a particular plaintiff is a question of law. Delbrel v. Doenges Bros. Ford, Inc., 1996 OK 36, ¶ 7, 913 P.2d 1318. "The court decides whether a defendant stands in such a relationship to a plaintiff that the defendant owes an obligation of reasonable conduct for the benefit of the plaintiff." Id.

A. Duty

¶18 The determination that a defendant owes a duty in a particular situation is "'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" Wofford v. Eastern State Hosp., 1990 OK 77, ¶ 10, 795 P.2d 516 (quoting William L. Prosser, Handbook of the Law of Torts 332-333 (West Publ'g Co., 3rd ed. 1964)). "Of [these policy] considerations the most important in establishing duty is foreseeability." Id. ¶ 11 (citing Tarasoff v. Regents of Univ. of Cal., 17 Cal. 3d 425, 131 Cal. Rptr. 14, 22, 551 P.2d 334, 342 (1976)).

¶19 "Foreseeability as an element of duty of care creates a 'zone of risk' and is a minimum threshold legal requirement" to state a cause of action for negligence. Delbrel v. Doenges Bros. Ford, Inc., 1996 OK 36, ¶ 12, 913 P.2d 1318 (holding that one who repairs automobile owes duty of care to owner and public because they are within the zone of risk of individuals who could be harmed by negligent performance of that contract). The foreseeability analysis to determine the existence and scope of a duty assesses "whether the conduct 'creates a generalized and foreseeable risk of harming others.'" Iglehart v. Bd. of Cty. Comm'rs of Rogers Cty., 2002 OK 76, ¶ 10 (citing Delbrel, 1996 OK 36, ¶ 8, and McCain v. Florida Power Corp., 593 So. 2d 500, 502-03 (Fla. 1992)).

B. TravelCenters' Duty

¶20 It is clear that TravelCenters has some duty regarding the sale of motor fuel to its customers. See, e.g., Brown v. Nicholson, 1997 OK 32, ¶ 7, 935 P.2d 319 (recognizing that business owner owes invitee a duty of reasonable care and business visitor is entitled to that care which would make the premises safe). Given the flammable nature of motor fuel, it is, for example, foreseeable that Edmonds could be injured if TravelCenters' motor fuel pump was defective. Cf. Palacine Oil Co. v. Philpot, 1930 OK 180, ¶ 19, 289 P. 281 (holding that a seller owes the general public a duty to handle distribution of motor fuel safely because it is "almost universally recognized as a more than ordinarily dangerous commodity"). Not only could Edmonds be endangered by a defective fuel pump, but also the passenger in Edmonds' car and others on the premises could be in that "zone of risk."

¶21 But, this case is not about TravelCenters' duty to maintain its premises in a safe condition or its duty to safely deliver motor fuel to its customers. The injury for which the Plaintiffs' seek to recover occurred in a different city.

II. Dram Shop Liability

¶22 To establish TravelCenters' duty, the Plaintiffs first rely on Oklahoma's dram shop cases. See, e.g., Brigance v. Velvet Dove Rest., Inc., 1986 OK 41, 725 P.2d 300. Brigance and the dram shop cases that followed, recognize that, as a matter of public policy, there is a foreseeable risk of harm to others created by a commercial vendor which sells alcohol to an intoxicated person who is likely to operate a motor vehicle. Id. ¶ 24. The main policy concern was expressed by the Court: "With today's car of steel and speed it becomes a lethal weapon in the hands of a drunken imbiber. The frequency of accidents involving drunk drivers are commonplace. Its affliction of bodily injury to an unsuspecting public is also of common knowledge." Id. ¶ 16. The Oklahoma Legislature has codified that policy as well. See Drunk Driving Prevention Act, 47 O.S.2011 §§ 11-906.1 through 11-906.4 (making it illegal to operate a motor vehicle while intoxicated or otherwise impaired).

¶23 In addition to this policy concern, "[t]he public regulates and licenses commercial vendors to sell and distribute alcohol for profit." Busby v. Quail Creek Golf and Country Club, 1994 OK 63, ¶ 11, 885 P.2d 1326. "'The Legislature has placed on every vendor who holds a license to furnish alcoholic beverages and a concomitant right to profit from its sale the responsibility to refrain from supplying those beverages to minors or to intoxicated persons.'" Tomlinson v. Love's Country Stores, Inc., 1993 OK 83, ¶ 8, 854 P.2d 910 (quoting Michnik-Zilberman v. Gordon's Liquor, 390 Mass. 6, 453 N.E.2d 430, 434 (1983)). Further, "the profit potential for liquor vendors [is] the substantial reason for imposing dram shop liability against the commercial vendor of alcohol." McGee v. Alexander, 2001 OK 78, ¶ 15, 37 P.3d 800 (declining to extend dram shop liability to non-commercial provider of alcoholic beverages).

¶24 The profit potential derived from the sale of alcohol to an intoxicated driver is not analytically equivalent to the profit potential to be derived from the sale of motor fuel to an intoxicated driver. The Plaintiffs' argument that the dram shop rationale is applicable because "alcohol fuels the driver but gasoline fuels the car" misses the point. Gasoline fuels all automobiles. Gasoline fueled Edmonds' automobile even when he was not intoxicated or had yet to reach the blood alcohol content level beyond which the Legislature has declared it is no longer legal to drive. The foreseeable risk of harm to the public recognized by dram shop liability case law results from providing alcohol to an already intoxicated person who is likely to operate a motor vehicle, not adding to the energy source for that vehicle. See Brigance v. Velvet Dove Rest., Inc., 1986 OK 41, ¶¶ 16-18, 724 P.2d 300.

¶25 In addition, as TravelCenters points out, there is no statute prohibiting the sale of motor fuel to an intoxicated driver. We recognize that dram shop liability is not founded solely on a statutory duty not to sell alcohol to a minor or an intoxicated adult. See Id., ¶ 18; Ohio Cas. Ins. Co. v. Todd, 1991 OK 54, ¶ 13, 813 P.2d 508; Tomlinson v. Love's Country Stores, Inc., 1993 OK 83, ¶ 18, 854 P.2d 910; Boyle v. ASAP Energy, Inc., 2017 OK 82, ¶ 32, 408 P.3d 183. Nonetheless, in each of the dram shop cases where liability was imposed from a common law duty, the Legislature had also declared that the conduct at issue was contrary to public policy. See 37 O.S. Supp. 1985 § 537 (repealed and replaced effective October 1, 2018 by 37A O.S. § 6-121) (declaring that the sale of alcohol to a person under the age of twenty-one or to one who is already intoxicated is a "public offense"). See also Brigance, 1986 OK 41, ¶ 18; Tomlinson, 1993 OK 83, ¶ 18; Boyle, 2017 OK 82, ¶ 28. The Legislature has yet to declare a similar public policy regarding the sale of motor fuel to impaired automobile drivers.

¶26 In the absence of controlling authority in Oklahoma, the Plaintiffs look to decisions from two other jurisdictions which have imposed a duty on commercial vendors to refrain from selling motor fuel to an intoxicated driver, Morris v. Giant Four Corners, Inc., 498 P.3d 238 (N.M. 2021), and West v. East Tennessee Pioneer Oil Company, 172 S.W.3d 545 (Tenn. 2005).[6] First, the Plaintiffs ask us to follow Morris, in which the New Mexico Supreme Court held that a commercial gasoline vendor owed a duty of care to a third party using the roadway to refrain from selling gasoline to a driver it knows or has reason to know is intoxicated. However, the Morris Court expressly rejected a foreseeability analysis to determine the existence of that duty, noting that New Mexico had adopted the Restatement (Third) of Torts. Id. at 243. "When assessing the existence or scope of a duty, a court does not analyze foreseeability or weigh the evidence." Id. (citing Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P., 326 P.3d 465 (N.M. 2014)). Rodriguez clarified that "foreseeability is not a factor for courts [in New Mexico] to consider when determining the existence of a duty . . . ." Rodriguez, 326 P.3d at 467.

¶27 The Restatement (Third) of Torts provides that, ordinarily one "has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts § 7. "Arguably, the most dramatic proposal of the Restatement (Third) . . . [is] the declaration that foreseeability should be ignored in ascertaining if a duty of care is owed." Vicki Lawrence McDougall, Negligence Purpose, Elements, and Evidence, Balloon Press, New York, NY (2018), p. XV. The Restatement (Third) of Torts § 7 "creates a default duty of reasonable care whenever a defendant's conduct causes physical harm." Martha Chamallas, Gaining Some Perspective in Tort Law: A New Take on Third-Party Criminal Attack Cases, 14 Lewis & Clark L. Rev. 1351, 1379 (2010).

¶28 Oklahoma has not adopted the Restatement (Third) of Torts. See Brewer v. Murray, 2012 OK CIV APP 109, ¶ 22, n.6, 292 P.3d 41 (Approved for publication by the Supreme Court). And we are unwilling to abandon decades of Oklahoma jurisprudence consistently requiring a foreseeability analysis to determine, as a matter of law, whether a defendant owed a duty to a particular plaintiff in negligence cases. In Oklahoma, "the most important [consideration] in establishing duty is foreseeability." Wofford v. Eastern State Hosp., 1990 OK 77, ¶ 11, 795 P.2d 516.

¶29 Second, the Plaintiffs cite West v. East Tennessee Pioneer Oil Company, 172 S.W.3d 545 (Tenn. 2005), in which the Tennessee Supreme Court held: "[T]he acts of the defendant in selling gasoline to an obviously intoxicated driver and/or assisting an obviously intoxicated driver in pumping gasoline into his vehicle created a foreseeable risk to persons on the roadways, including the plaintiffs." Id. at 551. West involved a customer who entered a convenience store, pushed his way to the front of a long line of customers, and demanded beer. The clerk refused to sell him beer because she believed him to be intoxicated. The customer became upset and caused a disturbance, then put three one-dollar bills on the counter, said "we need gas," and staggered out of the store. Id. at 548. Once outside, store employees had to assist the customer in operating the pump in order to put the three dollars of gasoline into his car -- his level of intoxication was so high he could not do so on his own. The customer then left the premises, drove into oncoming traffic, and hit another vehicle 2.8 miles away from the convenience store. Id. at 459.

¶30 There is a material and fundamental distinction between facts in West and this case. Sandoval and Foote did not assist Edmonds in fueling his vehicle.[7] At best, they "made his [Edmond's] situation no worse, and . . . merely failed to benefit him by interfering in his affairs." William L. Prosser, Handbook of the Law of Torts 339 (West Publ'g Co., 4th ed. 1964). This distinction between the affirmative act of contributing to the intoxication of a person likely to operate a motor vehicle, as in the dram shop cases, and the omission to act by failing to engage in conduct that might prevent future harm is "still deeply rooted in the law of negligence." Id. at 338. And, that distinction amplifies the difference between the basis for liability in the dram shop cases and TravelCenters' conduct in this case. Consequently, we decline to extend Brigance to retail vendors of motor fuel or to follow Morris and West.

III. Common Law Tort Liability

¶31 The Plaintiffs also rely on general common law principles of tort law, including 76 O.S.2011 § 1: "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." And, the Plaintiffs cite the following language from Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 13, 160 P.3d 959:

We have long recognized that without regard to the relationship of the parties, a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person.

Consistent with these principles, section 302 of the Restatement (Second) of Torts recognizes that an act or omission may be negligent if it involves an unreasonable risk of harm to another through the foreseeable act of a third person.[8] Based on this general principle, the Plaintiffs argue that TravelCenters owed a duty to Perry and her granddaughter even in the absence of any legal or special relationship. The authority cited by the Plaintiffs does not establish the duty they seek to impose.[9]

A. The Plaintiffs' General Tort Theory

¶32 First, the law codified at Title 76, section 1 "is the statutory statement of the basic principle of tort law." Larkins-Warr Trust v. Watchorn Petroleum Co., 1946 OK 84, ¶ 10, 174 P.2d 589. It "generally defines torts and is relied upon in instituting the different kinds of tort actions." Thomas v. Casford, 1961 OK 158, ¶ 13, 363 P.2d 856. But, it is only one "of the broad and fundamental provisions expressing principles which underlie any system of jurisprudence based upon the common law . . . ." Tucker v. Tucker, 1964 OK 89, ¶ 8, 395 P.2d 67. Title 76 O.S. § 1 does not provide a separate statutory basis for a tort claim. Id. (stating that 76 O.S. § 1 does not establish a tort cause of action in favor of a child against a parent); Gilmore v. Enogex, Inc., 1994 OK 76, ¶ 13, 878 P.2d 360 (rejecting the argument that 76 O.S. § 1 creates a separate tort claim independent from a breach of contract or wrongful discharge claim).

¶33 In addition, the general tort principle stated in Lowery and relied on by the Plaintiffs has often been cited in Oklahoma case law.[10] However, the principle first appeared in the common law in the late 19th century.[11] It was an early attempt to formulate a general duty for an emerging liability that was not dependent on a breach of contract. "Negligence as a basis of civil liability was unknown to mediaeval law." Palsgraf v. Long Island Ry. Co., 248 N.Y. 339, 345 (N.Y. 1928). Nonetheless, the statement was soon recognized, even by its author, as "far too broad" for a general principle defining a defendant's duty in negligence cases. William L. Prosser, Handbook of the Law of Torts 326 (West Publ'g Co., 4th ed. 1971).

¶34 The contract-based origins of the principle are essential to its proper application in tort cases. They are evident in Lisle v. Anderson, 1916 OK 92, 159 P. 278, where the Court affirmed the judgment against a primary contractor in favor of an employee of a subcontractor who was injured when support joists installed by the primary contractor failed. The Court noted that the plaintiff was not the employee of the primary contractor nor was he a party to the contract between the primary contractor and the building owner. Nonetheless, the Court applied the "'now well settled'" principle that "'in the law of negligence . . . there are duties owing, the violation of which will constitute actionable negligence, in instances other than those arising out of privity of contract, and many such arising outside of the relation of master and servant, etc.'" Id. ¶ 2 (quoting Loehring v. Westlake Constr. Co., 94 S.W. 747, 750 (Mo. Ct. App. 1906)).

¶35 In Keel v. Titan Construction Corporation, 1981 OK 48, 639 P.2d 1228, the Court applied the principle to hold an architect liable in tort for negligence to the buyer of a home the architect was hired to design even though the buyer was not a party to that contract. In Union Bank of Tucson, Arizona v. Griffin, 1989 OK 47, 771 P.2d 219, a tag agent was found liable for breach of a statutory duty to record liens on any certificate of title issued by the agent. "The law imposes upon a person engaged in the prosecution of any work an obligation to use ordinary care to perform it in such a manner as not to endanger the property of others." Id. ¶ 13 (citing Bradford Sec. Processing Servs., Inc. v. Plaza Bank & Trust, 1982 OK 96, 653 P.2d 188). Bradford Securities established that an attorney could be held liable for negligence in issuing a legal opinion to those who relied on that opinion when purchasing bonds even though the plaintiffs were not the attorney's client nor were they parties to his contract of employment with the bond seller. Bradford Securities, 1982 OK 96, ¶ 9.[12]

¶36 In each of the Oklahoma cases relying on the general principle cited by the Plaintiffs, the terms of a contract established the defendant's general duty. The negligent performance of that duty could subject the defendant to liability for harm caused to individuals who were not parties to the contract. But, the basis for that liability rested on an implied duty to perform the contract with a certain degree of care and skill. The only "contractual relationship" involved in this case is the transaction between TravelCenters and Edmonds concerning the sale and purchase of motor fuel. Plaintiffs' theory of the defendants' negligence does not rely on any breach of that contract.

¶37 Further, the Oklahoma cases and the principle stated in Lowery do not, as the Plaintiffs contend, establish a broad, general duty "to the world at large." Palsgraf v. Long Island Ry. Co., 248 N.Y. 339, 350 (N.Y. 1928) (Andrews, J., dissenting). That is the Restatement (Third) of Torts approach. In the absence of a contract, a defendant's duty "depends on the relationship between the parties and the general risks involved in the common undertaking." Wofford v. Eastern State Hosp., 1990 OK 77, ¶ 10, 795 P.2d 516. Different common law tort principles are used to determine a defendant's duty in the absence of a contractual relationship.

B. The Plaintiffs' Reliance on TravelCenters' Failure to Act

¶38 Second, general statements of the duty in negligence cases must still account for the difference between malfeasance and nonfeasance. As Comment "a" to section 302 of the Restatement (Second) of Torts clarifies:

In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act. The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty.

In the cases discussed in the preceding section, the defendants undertook the affirmative act of performing the duty set out in the contract. Nonetheless, Comment "a" provides: "If the actor is under no duty to the other to act, his failure to do so may be negligent conduct within the rule stated in this Section, but it does not subject him to liability, because of the absence of duty." "A particular tort action is based upon whether the particular defendant owes a legal duty to the particular plaintiff." Hensley v. State Farm Fire and Cas. Co., 2017 OK 57, ¶ 16, 398 P.3d 11. Foreseeablity determines to whom a duty is owed. Weldon v. Dunn, 1998 OK 80, ¶ 11, 962 P.2d 1273 (citing Haas v. Firestone Tire and Rubber Co., 1976 OK 178, 563 P.2d 620).

¶39 While foreseeability may be the most important factor in determining the existence of a duty, it is not the only factor. Additional factors include "the closeness of the connection between the defendant's conduct and the injury suffered, [and] the moral blame attached to the defendant's conduct." Tarasoff v. Regents of Univ. of Cal., 551 P.2d 334, 342 (Cal. 1976). See also Iglehart v. Bd. of Cty. Comm'rs of Rogers Cty., 2002 OK 76, ¶ 10, n.17; Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 14, n. 4; Brewer v. Murray, 2012 OK CIV APP 109, ¶ 22 (Approved for publication by the Supreme Court). The thirty-mile distance and almost four hours between the sale of motor fuel to Edmonds and the injury he caused, as well as the absence of moral blame in the legal sale of motor fuel also argue against the duty the Plaintiffs are required to show.[13]

¶40 And, it is the failure to act, that is, not refusing to sell motor fuel to Edmonds, on which the Plaintiffs rely to argue that TravelCenters owed Perry and her granddaughter a duty. Controlling precedent recognizes that it is foreseeable that an intoxicated driver might cause harm while illegally operating an automobile. See e.g., Brigance v. Velvet Dove Rest., Inc., 1986 OK 41, 725 P.2d 300. But that does not establish that TravelCenters owed a duty to Perry and her granddaughter. The Restatement (Second) of Torts § 314 provides: "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." The origin of this rule is derived from "the early common law distinction between action and inaction, or 'misfeasance' and 'non-feasance.' . . . It appeared first in, and is still largely confined to, situations in which there was some special relation between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection of the plaintiff." Restatement (Second) of Torts § 314, cmt. c.

¶41 The special relationships sufficient to impose such a duty are stated in Restatement (Second) of Torts § 314A and B and include common carriers, tavern owners (the basis for dram shop liability), owners and occupiers of land, employers and those charged with the custody of dangerous individuals. These "public calling" exceptions justified liability because the defendant "professed to be competent" and voluntarily undertook to provide "proper service" to the plaintiff. Prosser, Law on Torts (3d ed. 1964) § 28, at p. 139. The duty owed is to the person directly affected by the defendant's failure to act, for example, the common carrier's passenger, the innkeeper's guest and so on. Here, the harm to Perry and her granddaughter was caused by the criminal conduct of Edmonds and the exceptions to the rule stated in section 314 do not apply.

C. TravelCenters' Duty Regarding Edmonds' Criminal Conduct

¶42 As to Edmonds' conduct, one does not generally have a duty to protect the public from harm caused by the criminal conduct of a third party. Wofford v. Eastern State Hosp., 1990 OK 77, ¶ 9, 795 P.2d 516 (citing Restatement (Second) of Torts § 315 (1965)). Section 315 provides, in part: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another." See also Joyce v. M & M Gas Co., 1983 OK 110, ¶¶ 4, 7, 672 P.2d 1172 (finding that defendant who left keys in unattended vehicle "created no unreasonable risk to harm" and "owed no duty to the general public to protect its members from the risk of [thief's] negligent driving").

¶43 There are two exceptions to the general rule stated in Wofford and Restatement § 315, where "(1) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (2) a special relationship exists between the actor and the other which gives to the other a right to protection." Wofford, 1990 OK 77, ¶ 9 (noting that a number of other jurisdictions have recognized a special relationship exception to the general rule). The second exception does not apply here. As the Plaintiffs rightfully conceded at oral argument, TravelCenters did not have a special relationship with Perry and her granddaughter entitling them to TravelCenters' protection. Cf., Brewer v. Murray, 2012 OK CIV APP 109, 292 P.3d 41 (Approved for publication by the Supreme Court) (holding that a parent, who agreed to allow her daughter's friend to spend the night and then left the minors alone overnight, was liable for failing to protect the friend from criminal assault by a third-party). The Plaintiffs' case, therefore, depends on the existence of a special relationship between TravelCenters and Edmonds with respect to the sale of motor fuel.

¶44 The special relationships invoking this exception to the rule stated in section 315 are set out in the next four sections of the Restatement (Second) of Torts: section 316 (parent/child), section 317 (master/servant), section 318 (owners or occupiers of land), and section 319 (those in charge of prisoners or dangerous individuals). None of these special relationships existed between TravelCenters and Edmonds at the time he purchased motor fuel. Therefore, the general rule stated in section 315 governs -- TravelCenters did not have a duty to refuse to sell motor fuel to Edmonds in an attempt to prevent the harm that might be caused by his illegal driving.

IV. Negligent Entrustment

¶45 Finally, the Plaintiffs rely on Oklahoma's negligent entrustment law to establish TravelCenters' duty and argue, in essence, that one "may not assume that human beings will conduct themselves properly if the facts which are known or should be known to him should make him realize that they are unlikely to do so." Restatement (Second) of Torts, § 390 cmt. b (1965).

¶46 Section 390 of the Restatement (Second) of Torts provides:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

The rule stated in Restatement (Second) of Torts § 390 has been adopted in Oklahoma with respect to automobiles. See Berg v. Bryant, 1956 OK 336, ¶ 5, 305 P.2d 517 (holding that owner of automobile, who permitted one known to be a careless, reckless, and incompetent driver to use his vehicle, was negligent). See also Okla. Uniform Jury Instructions - Civil, No. 10.16, and 47 O.S.2011 §§ 6-304, 6-305 and 6-307.

¶47 Restatement section 390 was cited with approval in Sheffer v. Carolina Forge Co., L.L.C., 2013 OK 48, 306 P.3d 544 (reversing summary judgment in favor of employer who provided a rental car and alcohol through expense reimbursements for employees' use on a business trip where employer knew or should have known that employees had propensity to become intoxicated and negligently operate automobile). As Comment "c" to section 390 of the Restatement explains: "[I]f the supplier knows that the condition of the person to whom the chattel is supplied is such as to make him incapable of exercising the care which it is reasonable to expect of a normal sober adult, the supplier may be liable for harm . . . ."

¶48 Oklahoma follows this reasoning. "'The rationale underlying imposition of negligent entrustment liability on suppliers of chattels is that one has a duty not to supply a chattel to another who is likely to misuse it in a manner causing unreasonable risk of physical harm to the entrustee or others."' Sheffer, 2013 OK 48, ¶ 15 (quoting Casebolt v. Cowan, 829 P.2d 352, 360 (Colo. 1992), and citing Restatement (Second) of Torts § 390). The rule stated in section 390 also forms part of the basis for Oklahoma's dram shop law. See Brigance v. Velvet Dove Rest., Inc., 1986 OK 41, ¶¶ 19-20, 725 P.2d 300.

¶49 Although the majority of Oklahoma's negligent entrustment cases involve supplying an automobile to another, liability for negligent entrustment is not limited to motor vehicles. See Green v. Harris, 2003 OK 55, n.5, 70 P.3d 866 (citing Sawyer v. Kelly, 1944 OK 256, ¶ 3, 153 P.2d 97 (permitting child to ride a horse)); Ingram v. State, 1990 OK 2, 786 P.2d 77 (National Guard supplying dangerous weapons to postal employee); Vance By and Through Vance v. Thomas, 1986 OK CIV APP 3, ¶ 9, 716 P.2d 710 (providing a BB gun to a minor). Further, the Illustrations to section 390 use boats and loaded guns as examples of chattels which can be negligently entrusted in addition to automobiles.

¶50 Nonetheless, section 390 of the Restatement (Second) of Torts cannot be applied untethered from the law out of which it developed. Section 390 is a "special application" of the rule stated in section 308. Restatement (Second) of Torts, § 390, cmt. b (1965). Section 308 provides:

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Comment "a" to section 308 states:

The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

As previously discussed, the "thing" causing the injury in this case was the alcohol Edmonds consumed that impaired his ability to "engage in the activity" of illegally driving an automobile, not the fuel he used in his automobile. TravelCenters did not have control of Edmonds' automobile or the alcohol he consumed. And, the two TravelCenters attendants' refusal to sell motor fuel would not have prevented Edmonds from engaging in illegal activity unless they physically restrained him from driving away from TravelCenters' Store # 152. Even the West Court would agree that the TravelCenters attendants had no duty to physically restrain or prevent Edmonds from driving. West v. East Tenn. Pioneer Oil Co., 172 S.W.3d 545, 552 (Tenn. 2005) ("We also hasten to point out, as did the Court of Appeals, that by our decision today we do not hold that convenience store employees have a duty to physically restrain or otherwise prevent intoxicated persons from driving."). See also Cullum v. McCool, 432 S.W.3d 829, 838 (Tenn. 2013) ("[O]ur holding does not require store employees to restrain belligerent, intoxicated patrons by physical force.").

¶51 In contrast, National Trailer Convoy, Inc. v. Saul, 1962 OK 181, 375 P.2d 922, involved an automobile accident on the Will Rogers Turnpike caused by an intoxicated driver who stopped his truck on the Turnpike, turned off its lights and failed to display a proper signal. The plaintiff sued the driver, the driver's employer as well as the Turnpike Authority alleging that it was liable for the negligence of its employee, the gate attendant at the time the truck driver entered the Turnpike. The attendant testified that he observed the truck driver exit the Turnpike then make a U-turn to re-enter the Turnpike; that he had conversations with the truck driver during which the driver "slurred his words" and stated that "he had been out on [a drunk] or was out on one." Id. ¶ 14. The attendant testified, "without contradiction," that it was the duty of tollgate attendants who have reason to believe a driver is intoxicated, "to try to prevent him from driving through his gate onto the turnpike, and, failing in this, to notify the highway patrol. . . ." Id. ¶ 0 (Syllabus 2-3). The Turnpike Authority did not:

directly deny that, as indicated by the undisputed testimony of the Attendant and others, it has the duty of taking the measures described therein, to prevent, or stop, drivers, who are believed to be intoxicated, from operating their motor vehicles thereon.

Id. ¶ 14. Accordingly, the Supreme Court affirmed the judgment against the Turnpike Authority. The Plaintiffs here do not allege that Sandoval and Foote had the duty to prevent Edmonds from driving while intoxicated.

¶52 Following the Plaintiffs' reasoning, a vendor who permitted an intoxicated driver to fill his automobile's tires with air, or supplied replacement sparkplugs or any other component part necessary to the operation of an intoxicated driver's automobile could be held liable for any injury subsequently caused by that driver. The Plaintiffs' interpretation of section 390, for example, would impose liability on one who supplies directions to an intoxicated driver, sells ammunition to an intoxicated person, and so on. The focus of section 308 is on the instrumentality that directly causes injury and the ability of the defendant to prevent the dangerous conduct of a third person by "withholding consent" to use that "chattel" because it is "under the control" of the defendant. Restatement (Second) of Torts, § 308, cmt. a. No Oklahoma case has extended the reach of negligent entrustment law to the components of a misused chattel and we decline to do so here.

¶53 Further, in each of the Oklahoma negligent entrustment cases, some previously recognized exception to section 315 based on a "special relationship" justified the imposition of a duty to protect the public. Often, the liability imposed was consistent with some policy previously established by the Legislature. In Sheffer v. Carolina Forge Co., L.L.C., 2013 OK 48, 306 P.3d 544, for example, the employer supplied the automobile and paid for the alcohol through expense reimbursements to an employee who was known or had a propensity for becoming intoxicated. The special exception applicable to the facts in that case is Restatement (Second) of Torts § 317 (master/servant exception). The supporting policy is 47 O.S.2011 § 6-307 (imposing liability for knowingly permitting a person who is not qualified to operate one's motor vehicle). A similar basis for liability existed in National Trailer Convoy, Inc. v. Saul, 1962 OK 181, 375 P.2d 922, in which the defendant employed a driver, who the employer knew or should have known had a propensity for driving while intoxicated, to deliver its trailer to another. The special exception in that case is Restatement (Second) of Torts § 317 (master/servant exception) and the supporting policy was a jury instruction based on the predecessor to 47 O.S.2011 § 6-307. Accord, Shoemake v. Stich, 1975 OK 55, ¶ 13, 534 P.2d 667.

¶54 In Berg v. Bryant, 1956 OK 336, 305 P.2d 517, the defendant allowed a thirteen-year-old friend to drive his automobile. The special exception to section 315 of the Restatement (Second) of Torts relevant to this case is found in section 318 (permitting a third person to use a chattel in the owner's presence when the owner knows that will create an unreasonable risk of harm to others). The supporting policy is recognized in 47 O.S.2011 § 6-304 (prohibiting an owner from permitting an unauthorized minor to drive an automobile), and 47 O.S.2011 § 6-307 (imposing civil liability as a joint tortfeasor on an owner who permits one who is not qualified to operate the owner's automobile). Berg, 1956 OK 336, ¶¶ 5-6. In Green v. Harris, 2003 OK 55, 70 P.3d 866, the special relationship was different -- Restatement (Second) of Torts § 316 (parent/child exception) -- but the policy is the same, i.e., supplying an automobile to the owner's son who was known to be a careless, reckless and incompetent driver. Id. n.5 (citing 47 O.S. §§ 6-304, 6-305 and 6-307).

¶55 Even when the "chattel" is not an automobile, Oklahoma's negligent entrustment cases have rested on some special relationship exception to section 315. See Sawyer v. Kelly, 1944 OK 256, ¶ 3, 153 P.2d 97 (permitting child to ride horse, § 316 (parent/child exception)); Ingram v. State, 1990 OK 2, 786 P.2d 77 (permitting use of weapons by postal employee likely to use it in a manner creating an unreasonable risk of harm to others, § 318 (use of chattel exception)); Vance by and Through Vance v. Thomas, 1986 OK CIV APP 3, ¶ 9, 716 P.2d 710 (minor's possession of a BB gun, § 316 (parent/child exception)). We have established previously that none of these special relationships existed between TravelCenters and Edmonds. Consequently, the Plaintiffs' negligent entrustment theory of liability fails.

CONCLUSION

¶56 The Plaintiffs seek to impose a duty based on TravelCenters' failure to act, that is, "to refrain from selling motor fuel" to Edmonds given his alleged intoxicated state. In essence, the Plaintiffs seek to equate the foreseeable harm to the public from supplying an automobile or alcohol to an intoxicated driver with selling motor fuel to an intoxicated driver. The legislature has declared the former to be illegal; it has yet to declare such a policy with respect to the sale of motor fuel.

¶57 The basis for liability established by Oklahoma's dram shop cases -- the special relationship between a tavern owner and its customer -- is lacking here. Further, there is a material and substantive difference between selling the motor fuel necessary to operate an automobile, and selling the alcohol consumed by an already intoxicated driver. That difference precludes the extension of Brigance to retail vendors of motor fuel.

¶58 In addition, Oklahoma has not adopted the Restatement (Third) of Torts view that liability may be established in the absence of a duty that the defendant owed to the plaintiff. Absent a special relationship with the wrongdoer, one does not generally have a duty to protect the public from the harm caused by the criminal conduct of third parties like Edmonds. The allegations in the Plaintiffs' petition do not establish any exception to that general rule.

¶59 Finally, negligent entrustment of a "chattel," as a basis for tort liability does not extend to one who supplies the component parts of the chattel. In this case, it was not the motor fuel that caused the deaths of Perry and her granddaughter, but the alcohol consumed by Edmonds while driving his automobile. TravelCenters supplied neither of these "chattels."

¶60 The district court's dismissal of the Plaintiffs' petition is affirmed.

¶61 AFFIRMED.

BARNES, P.J., and HIXON, J., concur.

FOOTNOTES

[1] The Plaintiffs' appeal is assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter stands submitted without additional briefing. However, the Court conducted oral argument in the case on May 10, 2022, and the arguments of counsel are considered with their submissions to the district court.

[2] The parties agree that the Plaintiffs' claim for negligent hiring, supervision and training is dependent on their ability to state a cause of action for negligence and/or negligent entrustment. Cf., Fox v. Mize, 2018 OK 75, ¶ 14, 428 P.3d 314 (declining to decide "whether a negligent hiring claim should be treated differently than a negligent entrustment claim"). Because we hold that the Plaintiffs' petition failed to state a cause of action under either of those theories of liability, it is not necessary to address the negligent hiring and supervision issue.

[3] In support of this argument, the Plaintiffs attached handwritten statements signed by Sandoval and Foote, apparently given to the Beckham County Sheriff's Office, which was investigating Perry and A.P.'s death. Foote stated: "As he was talking to me I could smell that he had been drinking and asked him if he was doing what I thought he was doing and driving when he replied with a yes I told him he needed to go home and not to be driving any more." Foote also stated that Edmonds "didn't appear to be really intoxicated it was like he had only one or two maybe three tops." Sandoval stated that when Edmonds came in to pay for gas: "He smelt of alchol [sic]. . . . He said he had been drinking but did not appear drunk. I told him to go home. I also asked him why his girlfriend could not drive [and] he said that she was 'worse off than him.'" Edmonds told both attendants that he was going home and left the store. It is also undisputed that Perry and A.P. were killed in Mangum, approximately thirty miles from the TravelCenters' store and almost four hours after Edmonds purchased fuel there. However, the parties confirmed at oral argument that these evidentiary matters were not relied on by the district court in reaching its decision to dismiss the Plaintiffs' petition, and finding, as a matter of law, that TravelCenters owed no duty to the Plaintiffs.

[4] The term "dram" refers to "an apothecary measurement of fluid equal to an eighth of an ounce," or "[a] small measure of anything, esp liquor." Black's Law Dictionary 509 (7th ed. 1999). A "dram shop" is "[a] place where alcoholic beverages are sold; a bar or saloon." Id. "Dram shop liability" is the "[c]ivil liability of a commercial seller of alcoholic beverages for personal injury caused by an intoxicated customer." Id. 

[5] The Oklahoma Supreme Court has considered the application of dram shop liability in several cases since Brigance was decided in 1986. See Ohio Cas. Ins. Co. v. Todd, 1991 OK 54, 813 P.2d 508 (declining to extend dram shop liability where patron was adult, not minor); Sanders v. Crosstown Market, 1993 OK 25, 850 P.2d 1061 (declining to extend dram shop liability where minor drank illegally purchased beer at a party); Tomlinson v. Love's Country Stores, Inc., 1993 OK 83, 854 P.2d 910 (extending dram shop liability where beer was sold to minor patron for off-the-premises consumption); Busby v. Quail Creek Golf and Country Club, 1994 OK 63, 885 P.2d 1326 (extending dram shop liability where minor was served alcoholic beverages and injured herself); Mansfield v. Circle K Corp., 1994 OK 80, 877 P.2d 1130 (holding that dram shop liability applies where beer was sold to minor, regardless of whether it was for consumption on or off the premises); McGee v. Alexander, 2001 OK 78, 37 P.3d 800 (declining to extend dram shop liability to non-commercial provider); Boyle v. ASAP Energy, Inc., 2017 OK 82, ¶ 33, 408 P.3d 183 (holding that "one who sells intoxicating beverages for consumption off the premises has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person").

[6] As of the date of the Oral Argument, these are the only two jurisdictions to have decided whether a retail vendor of motor fuel owes a duty to the public to refuse to sell fuel to an intoxicated driver of an automobile. O'Toole v. Carlsbad Shell Serv. Station, 202 Cal. App.3d 151, 247 Cal.Rptr. 663, 669 (1988), held that a motor fuel vendor could be held liable for selling fuel to an intoxicated driver. However, the California Supreme Court denied review in that case two months later and ordered that the opinion not be published in the official reporter. No other reported California court decision has addressed the issue. The Morris case began in federal court. See Morris v. Giant Four Corners, Inc., 378 F. Supp.3d 1040 (D.N.M. 2019). The federal district court held that New Mexico would not impose liability on a retail vendor who sold motor fuel to an intoxicated driver. The United States Court of Appeals for the 10th Circuit certified the question to the New Mexico Supreme Court and reversed and remanded the federal district court's decision after receiving the Supreme Court of New Mexico's decision in Morris. See Morris v. Giant Four Corners, Inc., 856 Fed.Appx. 214, 10th Cir.(N.M.), Aug. 16, 2021.

[7] To the extent West also found a duty to refuse to sell motor fuel to an intoxicated person, we do not find that case persuasive for the reasons discussed herein.

[8] Much of the discussion in this Opinion incorporates the common law of negligence as described in the Restatement (Second) of Torts, many provisions of which have been relied on, if not expressly adopted by, the Oklahoma Supreme Court. "The Restatement has long been recognized as a material source of the common law." Bouziden v. Alfalfa Elec. Co-op., Inc., 2000 OK 50, ¶ 8, 16 P.3d 450 (Opala, J., dissenting) (footnote omitted) (noting a Restatement provision must be adopted to become the law of a jurisdiction). "The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma . . . ." 12 O.S.2011 § 2. When Oklahoma has no statutory or decisional law addressing an issue, resort to the Restatement for guidance is appropriate. American Bank of Oklahoma v. Wagoner, 2011 OK CIV APP 76, ¶ 23, 259 P.3d 841 (Approved for publication by the Supreme Court).

[9] This Court has considered similar issues on two previous occasions and reached the same result. Johnson v. Fine, 2002 OK CIV APP 47, 45 P.3d 441, held that a physician did not have a duty to plaintiffs injured or killed in an automobile accident allegedly resulting from the negligence of a driver impaired as a result of medications prescribed by the physician. The Johnson Court noted the two exceptions discussed in Wofford to the general rule of non-liability to those not privy to a physician's contract with a patient and found that the plaintiffs were not within the zone of risk created by that special relationship. In Owen v. Walgreen's Pharmacy, No. 115,276, slip op. (Okla. Civ. App. Dec. 23, 2016), the Court cited Igelhart for the proposition discussed in Part III(A) of this Opinion regarding the general duty owed to one foreseeably endangered by the defendant's conduct. The Court held that a commercial pharmacy and its employee owed a duty of care to its customers when reporting to police that a customer may be engaging in drunk driving. The Court did not, as one dissent in Boyle stated, hold that the pharmacy owed "a duty to the public . . . ." Boyle v. ASAP Energy, Inc., 2017 OK 82, ¶ 15, 408 P.3d 183 (Wyrick, J., dissenting). Harm to the public was not an issue in Owen, which reversed summary judgment in favor of the pharmacy and remanded the case for a resolution of the fact issue -- whether the defendant breached its duty to its customer by reporting to police that the customer was intoxicated and driving an automobile.

[10] Prior to Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 13, 160 P.3d 959, the principle appears in Wofford v. Eastern State Hosp., 1990 OK 77, ¶ 10, 795 P.2d 516; Union Bank of Tucson, Arizona v. Griffin, 1989 OK 47, ¶ 13, 771 P.2d 219; Bradford Sec. Processing Servs., Inc. v. Plaza Bank and Trust, 1982 OK 96, ¶ 6, 653 P.2d 188; and Lisle v. Anderson, 1916 OK 92, ¶ 0, 159 P. 278 (Syllabus 3), the first statement of the principle in Oklahoma law.

[11] "Whenever one person is, by circumstances placed in such a position with regard to another that everyone of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of another, a duty arises to use ordinary care and skill to avoid such danger." Heaven v. Pender (1883) 11 QB 503 (Lord Esher).

[12] In addition, Lowery, 2007 OK 38, 160 P.3d 959, involved a contract for the installation of a satellite disk, and Wofford, 1990 OK 77, 795 P.2d 516, concerned a contract established by the physician/hospital relationship with a patient. Igelhart, 2002 OK 76, 60 P.3d 497, concerned the duty of utility granted a license to serve the public pursuant to specified contractual terms and obligations. Accord Okla. Natural Gas Co. v. Pack, 1939 OK 475, ¶ 16, 97 P.2d 768 ("[T]he duty to use due care, skill, and reasonable expediency in the performance of the contract is implied by law in contracts between individuals, a fortiori it should be implied in cases where the defendant is a public utility furnishing services to the public while operating in a monopolistic capacity.").

[13] The parties do not dispute the time or location at which the accident occurred.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 

 
1992 CO 55, 829 P.2d 352, 
Casebolt v. Cowan
Cited

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1986 OK CIV APP 3, 716 P.2d 710, 57 OBJ 585, 
Vance By and Through Vance v. Thomas
Discussed at Length

 
2002 OK CIV APP 47, 45 P.3d 441, 
JOHNSON v. FINE
Discussed

 
2011 OK CIV APP 76, 259 P.3d 841, 
AMERICAN BANK OF OKLAHOMA v. WAGONER
Discussed

 
2012 OK CIV APP 109, 292 P.3d 41, 
BREWER v. MURRAY
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1986 OK 41, 725 P.2d 300, 57 OBJ 1698, 
Brigance v. Velvet Dove Restaurant, Inc.
Discussed at Length

 
1989 OK 47, 771 P.2d 219, 60 OBJ 813, 
Union Bank of Tucson, Arizona v. Griffin
Discussed at Length

 
1939 OK 475, 97 P.2d 768, 186 Okla. 330, 
OKLAHOMA NATURAL GAS CO. v. PACK
Discussed

 
1990 OK 2, 786 P.2d 77, 61 OBJ 143, 
Ingram v. State
Discussed at Length

 
1990 OK 77, 795 P.2d 516, 61 OBJ 2093, 
Wofford v. Eastern State Hosp.
Discussed at Length

 
1991 OK 54, 813 P.2d 508, 62 OBJ 1867, 
Ohio Cas. Ins. Co. v. Todd
Discussed at Length

 
1993 OK 25, 850 P.2d 1061, 64 OBJ 839, 
Sanders By and Through Sanders v. Crosstown Market, Inc.
Discussed

 
1993 OK 83, 854 P.2d 910, 64 OBJ 1866, 
Tomlinson v. Love's Country Stores, Inc.
Discussed at Length

 
1916 OK 92, 159 P. 278, 61 Okla. 68, 
LISLE v. ANDERSON
Discussed at Length

 
1994 OK 80, 877 P.2d 1130, 65 OBJ 2334, 
Mansfield v. Circle K. Corp.
Discussed

 
1994 OK 76, 878 P.2d 360, 65 OBJ 2238, 
Gilmore v. Enogex, Inc.
Discussed

 
1994 OK 63, 885 P.2d 1326, 5 OBJ 1945, 
Busby v. Quail Creek Golf and Country Club
Discussed at Length

 
1997 OK 32, 935 P.2d 319, 68 OBJ 992, 
Brown v. Nicholson
Discussed

 
1946 OK 84, 174 P.2d 589, 198 Okla. 12, 
LARKINS-WARR TRUST v. WATCHORN PETROLEUM CO.
Discussed

 
1956 OK 336, 305 P.2d 517, 
BERG v. BRYANT
Discussed at Length

 
2001 OK 78, 37 P.3d 800, 72 OBJ 2734, 
MCGEE v. ALEXANDER
Discussed at Length

 
1961 OK 158, 363 P.2d 856, 
THOMAS v. CASFORD
Discussed

 
1962 OK 181, 375 P.2d 922, 
NATIONAL TRAILER CONVOY, INC. v. SAUL
Discussed at Length

 
1964 OK 89, 395 P.2d 67, 
TUCKER v. TUCKER
Discussed

 
2002 OK 76, 60 P.3d 497, 
IGLEHART v. BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY
Discussed at Length

 
2003 OK 55, 70 P.3d 866, 
GREEN v. HARRIS
Discussed at Length

 
2004 OK 7, 85 P.3d 841, 
FANNING v. BROWN
Discussed

 
1930 OK 180, 289 P. 281, 144 Okla. 123, 
PALACINE OIL CO. v. PHILPOT
Discussed

 
1996 OK 36, 913 P.2d 1318, 67 OBJ 953, 
Delbrel v. Doenges Bros. Ford, Inc.
Discussed at Length

 
2007 OK 38, 160 P.3d 959, 
LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed at Length

 
1996 OK 73, 918 P.2d 1388, 67 OBJ 2060, 
LCR, Inc. v. Linwood Properties
Discussed

 
2009 OK 4, 212 P.3d 1158, 
TUFFY'S, INC. v. CITY OF OKLAHOMA CITY
Discussed at Length

 
2009 OK 65, 222 P.3d 21, 
KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed

 
2010 OK 3, 230 P.3d 853, 
ROGERS v. QUIKTRIP CORP.
Discussed

 
1975 OK 55, 534 P.2d 667, 
SHOEMAKE v. STICH
Discussed

 
2013 OK 48, 306 P.3d 544, 
SHEFFER v. CAROLINA FORGE COMPANY, L.L.C.
Discussed at Length

 
1976 OK 178, 563 P.2d 620, 
HAAS v. FIRESTONE TIRE & RUBBER CO.
Discussed at Length

 
2015 OK 56, 352 P.3d 1223, 
FARGO v. HAYS-KUEHN
Discussed

 
2017 OK 42, 396 P.3d 210, 
ANDREW v. DEPANI-SPARKES
Discussed

 
2017 OK 57, 398 P.3d 11, 
HENSLEY v. STATE FARM FIRE AND CASUALTY CO.
Discussed at Length

 
2017 OK 82, 408 P.3d 183, 
BOYLE v. ASAP ENERGY, INC.
Discussed at Length

 
2018 OK 75, 428 P.3d 314, 
FOX v. MIZE
Discussed

 
1981 OK 48, 628 P.2d 700, 
Wolfe v. Faulkner
Cited

 
1981 OK 148, 639 P.2d 1228, 
Keel v. Titan Const. Corp.
Cited

 
1982 OK 96, 653 P.2d 188, 
Bradford Securities Processing Services, Inc. v. Plaza Bank and Trust
Discussed at Length

 
1998 OK 80, 962 P.2d 1273, 69 OBJ 2630, 
Weldon v. Dunn
Discussed

 
2000 OK 50, 16 P.3d 450, 71 OBJ 1753, 
BOUZIDEN v. ALFALFA ELECTRIC COOPERATIVE, INC.
Discussed

 
1944 OK 256, 153 P.2d 97, 194 Okla. 516, 
SAWYER v. KELLY
Discussed at Length

 
1983 OK 110, 672 P.2d 1172, 
Joyce v. M & M Gas Co.
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2, 
Common Law to Remain in Force in Aid of General Statutes
Cited

 
12 O.S. 651, 
New Trial - Definition - Causes for
Cited

 
12 O.S. 696.2, 
Judgment, Decree or Appealable Order to be Written - Preparation of Written Documents - Filing - Mailing - Effect
Cited

 
12 O.S. 994, 
Procedure When There is More Than One Claim or Party - Final Judgment
Discussed

 
12 O.S. 1031, 
District Court, Power to Vacate or Modify its Judgments, When
Cited

 
12 O.S. 1031.1, 
Authorization to Correct, Open, Modify or Vacate Judgments - Time - Notice - Costs
Cited

 
12 O.S. 2012, 
Defenses and Objections - When and How Presented - By Pleading or Motion
Cited

Title 37. Intoxicating Liquors

 
Cite
Name
Level

 
37 O.S. 537, 
Repealed
Cited

Title 47. Motor Vehicles

 
Cite
Name
Level

 
47 O.S. 6-304, 
Permitting Unauthorized Minor to Drive
Discussed at Length

 
47 O.S. 6-307, 
Liability for Knowingly Permitting the Operation by a Person Not Qualified
Discussed at Length

Title 76. Torts

 
Cite
Name
Level

 
76 O.S. 1, 
Every Person Bound not to Injure Person or Property of Another or Infringing upon His Rights
Discussed at Length

Title 37A. Alcoholic Beverages

 
Cite
Name
Level

 
37A O.S. 6-121, 
Penalties for Knowingly Selling, Furnishing, or Giving an Alcoholic Beverage to an Insane, Mentally Deficient or Intoxicated Person
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA